1997 ME 185

**TOWN OF ORONO**

v.

**Perry E. LaPOINTE.**

Supreme Judicial Court of Maine.

Argued April 7, 1997.

Decided Aug. 8, 1997.

Thomas A. Russell (orally), Farrell, Rosenblatt & Russell, Bangor, for plaintiff.

Edmond J. Bearor (orally), Rudman & Winchell, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Defendant Perry LaPointe appeals from a judgment entered in the Superior Court (Penobscot County, *MacInnes, J.*) vacating part of a District Court judgment (Bangor, *Russell, J.*) that suspended a portion of a civil penalty. The District Court suspended all but $3,000 of a $73,000 penalty. The penalty was assessed against defendant pursuant to 30–A M.R.S.A. § 4452 (1996) for operating an automobile graveyard or junkyard without a permit in violation of 30–A M.R.S.A. § 3753 (1996). Defendant argues that the District Court properly interpreted the applicable statutory provisions to allow the suspension. On its cross-appeal, plaintiff Town of Orono (the "Town") argues that the District Court, as affirmed by the Superior Court, erred by determining that defendant's junkyard is a grandfathered nonconforming use pursuant to the Orono Land Use Ordinance. We affirm the judgment of the Superior Court.

[¶ 2] The evidence presented at the trial may be summarized as follows: Defendant has owned a one hundred acre tract of land at the end of Kelley Road in Orono for over forty years. Sometime in the 1950's, he began storing, salvaging, and repairing vehicles on the property. In 1961, the Town enacted a zoning ordinance that placed this property in a rural farming zone that does not permit automobile junkyards. The Town records indicate that defendant first applied for a permit in 1967 pursuant to the junkyard statute which provides that:

> No person may establish, operate or maintain an automobile graveyard, automobile recycling business or junkyard without first obtaining a nontransferable permit from the municipal officers.... Permits issued to an automobile graveyard or junkyard under this section are valid until the first day of the following year.

30–A M.R.S.A. § 3753 (1996). In the 1967 application, defendant stated that the junkyard was twenty-five acres in area and that it was initially established in 1954. The Town issued a permit to defendant for every year from 1968 to 1993. In 1972, the Town conditioned its approval by limiting the junkyard to a twenty-five acre area.

[¶ 3] In December 1991, the Town Council gave notice to defendant that he would be required to screen the junkyard from the "public highway," in accordance with 30–A M.R.S.A. § 3755(1)(A),[1] before the next permit review. Defendant failed to screen the junkyard and consequently the Town denied the 1993 permit. Defendant continued to operate the junkyard without the screening and the Town also denied his subsequent 1994 permit application. Defendant did not appeal from the denial of either application.

[¶ 4] During his investigation of the screening violation, the Town's code enforcement officer became convinced that the junkyard was not commercially active until sometime after 1961. Because the Orono Land Use Ordinance has prohibited junkyards in the zone in which defendant's land is located since 1961, the code enforcement officer concluded that the junkyard was an illegal use that had not been grandfathered. In September 1994, the Town filed a Land Use

---

1. Section 3755 provides in part that:
   No permit may be granted for an automobile graveyard or junkyard within 1,000 feet of the right-of-way of any highway incorporated in the Interstate and Primary Systems or within 600 feet of the right-of-way of any other highway, except for:

   A. Those automobile graveyard or junkyards that are kept entirely screened to ordinary view from the highway at all times by natural objects, plantings or fences;

   30–A M.R.S.A. § 3755(1)(A) (1996).

Citation and Complaint pursuant to M.R.Civ. P. 80K alleging that defendant violated 30–A M.R.S.A. § 3753 by operating an automobile junkyard without a permit in 1993 and 1994. For this violation, it requested that civil penalties be assessed in accordance with 30–A M.R.S.A. §§ 3758 & 4452. The complaint also alleged a violation of the Orono Land Use Ordinance for operating in a zone that prohibits automobile junkyards and requested that the operation be enjoined.

[¶ 5] At the trial, an aerial photographer identified aerial photographs taken in 1955,- '59, '65, '77, '86, '93, and '95. He testified that the photographs evidenced no vehicles in 1955, some vehicles around the house in 1959, a few clusters of vehicles in 1965, and vehicles "all over the place" in 1977 and subsequent years. On cross-examination, he admitted that it was possible that in 1955 and 1959 there were vehicles in the woods that would not be depicted in the photographs.

[¶ 6] Defendant, who represented himself and did not testify, presented four witnesses who testified to the operation of the junkyard from 1954 to the present. Eugene Raymond lived on the property from 1954 to 1959 and remembered that his father and defendant bought eighty-five cars in 1955 and brought them onto the property for salvage. Harold Wilcox, who did business with defendant, testified that defendant's inventory fluctuated from a dozen to three hundred cars during the 1950's. Walter Reed testified that defendant stored vehicles along the woods roads and under trees. Eugene Raymond testified that the fields were empty until haying, but that after that, his father and defendant would bring cars into the fields to burn and strip them. He and his brother would collect the lead and copper that came off the burned cars. Richard Delong and Eugene Raymond testified that the inventory of vehicles fluctuated and that defendant would periodically crush up to ninety percent of his stock.

[¶ 7] The District Court ruled that the junkyard was grandfathered pursuant to the Orono ordinance, that the operation never exceeded the acreage limit set by the Town in 1972, and that the post–1961 use did not illegally exceed the grandfathered use. The court also found that defendant operated the junkyard without a permit for 730 days in 1993 and 1994. The court assessed a fine at $100 per day, totalling $73,000. It then suspended all but $3,000 of that fine.

[¶ 8] The Town appealed, and the Superior Court affirmed the District Court in all respects except for the fine suspension. The court found no statutory authority for the suspension. Mr. Lapointe now appeals, and the Town cross-appeals.

I. Suspension of the Statutory Penalty

[¶ 9] When a statute imposes a minimum civil penalty a court may not assess a lesser penalty unless the Legislature has provided it with the discretion to do so. *Department of Environmental Protection v. Emerson,* 616 A.2d 1268, 1272 (Me.1992). In *Emerson,* we reviewed the State's appeal from a judgment imposing a penalty less than the statutory minimum required by 38 M.R.S.A. § 349(2) (1989). Because the statute made no provision for imposing less than the minimum penalty of $100 for each day of the continuing violation, we modified the judgment to impose the minimum penalty of $191,600. *Id.* at 1272. Defendant's appeal implicates the *Emerson* rule and requires that we determine the minimum statutory penalty and the extent of the court's discretion in assessing that penalty.

[¶ 10] Junkyards and automobile graveyards are subject to state regulation administered locally by municipal and county officials pursuant to Title 30–A §§ 3751–3760. The operation of a junkyard without a permit from the municipality or county is subject to civil penalties. The specific statute penalizing unlicensed junkyards provides as follows:

> Whoever violates this subchapter [§§ 3751–3760] or the rules of the Department of Transportation adopted under section 3759 must be penalized in accordance with section 4452. *Each day that the violation continues constitutes a separate offense.*

30–A M.R.S.A. § 3758(2) (1996) (emphasis added). The procedures for local enforcement of land use laws and ordinances in general are set forth in 30–A M.R.S.A. § 4452. This section provides that "the minimum penalty for a specific violation [of the

applicable ordinance or law] is $100, and the maximum penalty is $2,500." Section 4452(3)(B).

[¶ 11] Defendant argues that $2,500 is the absolute maximum penalty regardless of the number of days he operated without a permit. This interpretation, however, is contrary to a plain reading of the statute. "Unless the statute itself reveals a contrary legislative intent, the plain meaning of the language will control its interpretation." *Murphy v. Board of Environmental Protection,* 615 A.2d 255, 258 (Me.1992). The maximum penalty of $2,500 pertains to "a specific violation" or "separate offense," not a series of separate violations or offenses.

[¶ 12] Defendant next argues that, notwithstanding the express directive in section 3758 that each day constitutes a separate offense, the prefatory language to the general provisions set forth in section 4452 grants the court the discretion to impose penalties for less than all of the days he operated without a permit. He relies on the following language: "Except for paragraph H, monetary penalties *may* be assessed on a per-day basis." 30–A M.R.S.A. § 4452(3) (emphasis added). The language in question was added to section 4452 in 1989 [2] and provides a court with discretionary authority to impose penalties for continuing violations on a per-day basis. Prior to 1989, section 4452 provided no authority to impose daily penalties for continuing violations. *See Town of Falmouth v. Long,* 578 A.2d 1168, 1172–73 (Me. 1990); *Town of Freeport v. Brickyard Cove Associates,* 594 A.2d 556, 558 (Me.1991); *Town of Ogunquit v. McGarva,* 570 A.2d 320, 321(Me.1990). Thus, in the absence of any other provision authorizing daily penalties, $2,500 was the absolute "maximum" penalty for most land use violations. Section 3758, however, is such an "other provision" and since 1963 [3] it has specifically mandated that each day of illegal operation of a junkyard constitutes a separate offense. Read together, section 3758 and 4452(3)(B) mandate a minimum penalty of $100 for each day that the junkyard is operated without a permit. The court is without discretion to consider

each day of unlicensed operation as anything other than a separate offense. Defendant does not challenge the court's determination that he operated in such a manner for 730 days. The only discretion permitted to the court is in assessing the penalty for each separate offense between the minimum of $100 and the maximum of $2,500. The District Court correctly assessed the minimum penalty of $73,000 but erred by suspending any part of it.

## II. Zoning Ordinance

[¶ 13] The court ruled that defendant's junkyard is permitted pursuant to the Orono ordinance as a nonconforming use. To qualify for "nonconforming" or "grandfathered" status, it must be shown that the use existed prior to the enactment of the zoning provisions prohibiting it and that the use was "actual and substantial." *Seven Islands Land Co. v. Maine Land Use Reg. Com'n.* 450 A.2d 475, 481 (Me.1982). The nonconforming user has the burden to prove the nonconforming status. *Id.* The court found that defendant operated a junkyard for several years before 1961. Although the court did not specifically find that the use was actual and substantial, we assume that the court made all necessary findings to support its decision when, as in this case, neither party has made a request for further findings. *Glidden v. Belden,* 684 A.2d 1306 (Me. 1996). The Town challenges these findings on its cross-appeal, and to prevail must demonstrate that they are clearly erroneous. *Id.* Contrary to the Town's contention, the record is replete with evidence that supports a finding of substantial use before 1961.

[¶ 14] The Town also challenges the court's determination that the junkyard did not lose its nonconforming status by an illegal extension, expansion or change of the use. First, we note that the court erroneously placed the burden on defendant to prove that the use did not exceed his grandfathered use. The general rule applies that, as the moving party, the Town has the burden to prove the facts it alleges. *Nichols v. Cantara & Sons,* 659 A.2d 258, 262 (Me.1995).

---

**2.** P.L.1989, c. 727, § 1.

**3.** P.L.1963, c. 178 § 6.

In *Mason v. Crooker–Mulligan,* 570 A.2d 1217, 1220 (Me.1990), we stated that the neighbor plaintiffs, seeking to enjoin a use, had the burden of proving "that in some manner or for some purpose the grandfathered use ... had been altered, extended or enlarged by its current use."[4]

[¶ 15] Initially, the Town contends that the court applied the wrong legal standard and ignored its argument that defendant illegally expanded the junkyard into new areas of his 100 acre parcel. The 1961 ordinance specifically prohibited the extension of a "nonconforming open use of land ... to any part of the remainder of the lot."[5] We find no merit in this argument because the court did address the issue; it specifically found that defendant's operation has never exceeded the twenty-five acre limit set by the Town in 1972. Moreover, the Town failed to discharge its burden to prove any shift in the actual location of the twenty-five acres.

[¶ 16] Next, the Town argues that the court's factual determination is clearly erroneous. Although the Town contends that aerial photographs prove that the large open fields were not in use before 1961, other competent evidence suggests that the use of the fields was seasonal. The court rationally could have found that defendant's operation occupied twenty-five acres before 1961. A mere increase in the volume of vehicles stored on defendant's lot does not constitute an illegal expansion or change of use. *Boivin v. Town of Sanford,* 588 A.2d 1197, 1199 (Me.1991).

The entry is:

Judgment affirmed.

---

4. If the present action were instituted by defendant on an application to alter the use, he would have the burden to prove the alteration did not constitute an illegal change, expansion or extension. *See Total Quality v. Town of Scarborough,* 588 A.2d 283, 284 (Me.1991).

5. Subsequent revisions of the ordinance contain a more general prohibition of any extension, expansion, or change unless to a conforming use.