2000 ME 109

**TURBAT CREEK PRESERVATION, LLC**

v.

**TOWN OF KENNEBUNKPORT et al.**

Supreme Judicial Court of Maine.

Argued May 2, 2000.
Decided June 5, 2000.

John J. Aromando (orally), Matthew D. Manahan, Pierce Atwood, Portland, for plaintiff.

Willimam H. Dale (orally), Natalie L. Burns, Jensen Baird Gardner & Henry, Portland, for defendant.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Turbat Creek Preservation, LLC appeals from a judgment of the Superior Court (York County) including: (1) the court's order (*Perkins, A.R.J.*) affirming the Town of Kennebunkport Zoning Board of Appeals' decision that Turbat Creek's residential use of a "boathouse" violates the Town's Land Use Ordinance and granting summary judgment against Turbat Creek's due process claim; and (2) the court's order (*Brennan, J.*) concluding, af-ter a bench trial, that the Town is not equitably estopped from determining that regular residential use of the boathouse violates its land use ordinance. Finding no error of law in the court's decisions, and finding the factual determinations fully supported in the record, we affirm.

## I. CASE HISTORY

[¶ 2] In 1996, Turbat Creek purchased a parcel of land including four mainland cottages and a structure, called a boathouse, erected on a marsh island in Turbat Creek in Kennebunkport. Turbat Creek then sought and obtained from the Town a permit to renovate and resell the four cottages, which had been part of a family compound, as separate, independent, residential condominium units. This application did not indicate the island boathouse as a fifth residential unit. Instead, it appeared to be part of the common areas of the condominium. The plan supporting the application noted that conversion of common areas or creation of new units would require Town subdivision approval. However, Turbat Creek documents that were not part of the plan reserved the boathouse for the exclusive use of the Turbat Creek principal, Jeffrey N. Cohen.

[¶ 3] Evidence in the record indicated that, for approximately the previous forty years, the boathouse had been used for occasional overnight stays and as a common gathering place for residents and guests at the four mainland cottages. Although overnight stays were occasional, evidence indicated that the toilet and wastewater facilities had not been used since approximately 1990 and the hot water heater had not been used since approximately 1975.

[¶ 4] Cohen approached the Town's code enforcement officer and inquired about a permit to renovate the boathouse and the piers and pilings supporting it. The record supports the view that Cohen's request to the code enforcement officer indicated that the purpose of the renovations was to

modernize, but continue the pre-existing use of, the boathouse. The estimated cost for work under the permit was $25,000. After obtaining the permit to make the indicated renovations, particularly to the piers and pilings, Cohen expended a total of $115,403.70 for renovations, making the boathouse a fully functional residential dwelling. The renovated boathouse was usable as a dwelling from April to October each year while the Town maintained a seasonal waterline to the property.

[¶ 5] Beginning in April of 1997, Cohen started using the boathouse as a dwelling, staying there approximately sixty nights in the 1997 season.

[¶ 6] In October of 1997, the code enforcement officer served a notice of violation. The notice stated that Cohen's use of the boathouse violated the Town's ordinance provision prohibiting conversion of structures built on piers beyond the normal high water mark into residential dwelling units. The notice also ordered Cohen to discontinue use of the boathouse as a dwelling. Turbat Creek and Cohen appealed the notice of violation to the Kennebunkport Zoning Board of Appeals. After a hearing, the Board of Appeals affirmed the notice of violation.

[¶ 7] Turbat Creek appealed the Zoning Board of Appeals's decision to the Superior Court. Turbat Creek's action sought appellate review pursuant to M.R. Civ. P. 80B. In addition to the Rule 80B claim, Turbat Creek asserted independent claims for estoppel and due process violations, plus other issues that were withdrawn during the course of the Superior Court's proceedings. After a hearing on legal issues, the court (*Perkins, A.R.J.*) ruled against Turbat Creek on the Rule 80B and due process claims based on the record of the Zoning Board of Appeals proceedings. The equitable estoppel claim proceeded to a bench trial after which the court (*Brennan, J.*) issued findings and an order denying Turbat Creek's equitable estoppel claim. Turbat Creek then filed a timely appeal to this Court.

## II. DISCUSSION

[¶ 8] Turbat Creek asserts that: (1) the Board of Appeals violated Turbat Creek's due process rights by not being impartial in its decision-making; (2) use of the boathouse as a residential dwelling, unrestricted, is permitted because such a residential use is allowed within the Village Residential East Zone in which the marsh island is located; (3) if unlimited residential use is not allowed, then use of the boathouse for overnight stays and related purposes is permitted as a grandfathered use; and (4) the Town should be equitably estopped from preventing the use of the boathouse for overnight stays and residential purposes. Turbat Creek's first two claims are totally lacking in merit.

### A. Due Process

[¶ 9] Turbat Creek asserts two due process violations. First, Turbat Creek complains that the Town attorney appeared at the Zoning Board of Appeals hearing explicitly stating that he was representing the code enforcement officer and not representing or advising the Board in connection with this matter. Second, Turbat Creek complains that the Chair of the Board demonstrated bias by having prepared in advance of the hearing an outline of issues and potential findings based on her review of Cohen's written materials. Neither of these points rise to the level of due process violations. The Zoning Board of Appeals was not required to have counsel, and the Town attorney's position that he was not representing or advising the Board was made very clear at the hearing. Separately, there is no prohibition on a hearing officer reviewing documents in advance and preparing memos of potential findings and issues to assist the officer or the Board in consideration of matters that may arise at the hearing.

### B. Residential Use

[¶ 10] The Kennebunkport Land Use Ordinance clearly resolves the resi-

dential use question. While the marsh island on which the boathouse is situated may be within the Village Residential East Zone, the record establishes unequivocally that the marsh island is also within a Resource Protection Zone in which residential uses, absent grandfathering, are strictly prohibited.[1] The Resource Protection Zone extends to "fresh water and coastal wetlands[,] ... all land ... below the normal high water mark of any tidal water ... [and] one hundred year flood planes adjacent to tidal waters." A marsh island subject to daily tidal flooding or at least flooding on high runs of tide is certainly within all of these criteria. Construction of a residence or renovation of a structure to become a residence on a marsh island is specifically prohibited. Only grandfathered structures with grandfathered uses may be maintained on a tidal marsh.

## C. Grandfathering and Abandonment

[¶ 11] We review directly the decision of the Zoning Board of Appeals for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *See Richert v. City of South Portland*, 1999 ME 179, ¶ 6, 740 A.2d 1000, 1002.

[¶ 12] Turbat Creek asserts that the boathouse is grandfathered to permit occasional overnight stays, although its toilet facilities had not functioned since 1990 and its hot water facilities had not functioned since 1975. Section 8.1 of the ordinance governs nonconforming rights and provides. "A non-conforming structure, use or lot is permitted to continue as it existed prior to the date such structure, use or lot became non-conforming under the provisions of this Ordinance, as amended." The availability of nonconforming uses is limited by section 8.6, which provides, "If a nonconforming use is discontinued for twelve (12) consecutive months, such use shall no longer be permitted.".

[¶ 13] "To qualify for 'nonconforming' or 'grandfathered' status, it must be shown that the use existed prior to the enactment of the zoning provisions prohibiting it and that the use was 'actual and substantial.'" *Town of Orono v. LaPointe*, 1997 ME 185, ¶ 13, 698 A.2d 1059, 1062. In order to grandfather a nonconforming use, such use must "reflect the nature and purpose of the use prevailing when the zoning legislation took effect" and not be "different in quality or character, as well as in degree, from the original use," or "different in kind in its effect on the neighborhood." *Keith v. Saco River Corridor Comm'n*, 464 A.2d 150 (Me.1983).

[¶ 14] Turbat Creek argues that its proposed use of the boathouse for unlimited overnight stays is grandfathered because such use amounts to a mere increase in the frequency of use, not a change in the nature or character of the use. In *Frost v. Lucey*, 231 A.2d 441 (Me.1967), we held that the prolongation of the operation of a hotel with incidental dining room service from a period of four months in the summer to a year-round activity did not amount to a prohibited expansion of a nonconforming use. *See id.* at 449. The principle we relied on is that:

> [W]here the original nature and purpose of the enterprise remain the same, and the nonconforming use is not changed in character, mere increase in the amount or intensity of the nonconforming use within the same area does not constitute an improper expansion or enlargement of such nonconforming use.

*Id.* at 448. The holding in *Frost* was divided: we affirmed an injunction against catering to large parties of nonhotel patrons where the hotel had historically offered only incidental dining room service to hotel guests and casual visitors, but

---

1. This prohibition is in accordance with state law, which requires municipalities to adopt zoning and land use control ordinances meeting minimum guidelines set by the Board of Environmental Protection for the protection and preservation of shoreland areas. *See* 38 M.R.S.A. §§ 435 & 438–A (1989 & Supp. 1999).

vacated that portion of the order enjoining year-round hotel operations and incidental dining room service. *See id.* at 449. Because the holding in *Frost* partially affirmed and partially vacated the order below, it illustrates how change in the character or quality of a use differs from mere increase in the frequency or quantity of use.

[¶ 15] Here we have not only an increase in the quantity of overnight stays, but also a change in the quality of the use. The record supports the Zoning Board of Appeals's determination that Cohen's usage was far in excess of the previous "occasional" overnight stays. Cohen's use of the structure unequivocally changed from an accessory structure for the mainland residences to an independent living unit, exclusive of the mainland residences.

[¶ 16] With respect to any more limited, occasional overnight usage, the Ordinance's abandonment clause provides that any nonconforming use that is discontinued for more than twelve months is lost. The Board's findings regarding grandfathering and abandonment are fully supported in the record.

D. Estoppel

[¶ 17] The record supports the court's finding that Cohen misled the code enforcement officer regarding the scope and intended uses of his proposed improvements to the boathouse. A town cannot be equitably estopped from asserting a violation in a particular use of property when the renovations of the property leading to the use receive town approval based on misleading information provided by the applicant as to the nature of the renovations and extent of the intended uses.

The entry is:

Judgment affirmed.