STATE OF MAINE                          SUPERIOR COURT
SAGADAHOC, ss.                          CIVIL ACTION
                                        DOCKET NO. AP-01-002
                                        *REC -SAG- 6/10/2004*

R. CRAIG ROGERS,
                                                    REC'D & FILED
                Plaintiff                           SAGADAHOC COUNT

        v.                              ORDER          JUN 10 2004

TOWN OF WEST BATH,                      DONALD L. GARBRECHT        SUPERIOR COURT
                                           LAW LIBRARY
                Defendant.
                                           iJUN 29 2004

Plaintiff R. Craig Rogers (Rogers) seeks review of governmental action by the

West Bath Zoning Board of Appeals (ZBA) under Rule 80B.

                                    FACTS

Rogers operates a trash hauling business on property belonging to his parents in

West Bath, Maine (the subject property). The subject property was zoned for rural

residential use. In September 2000, the Town of West Bath (Town) notified Rogers that

he was in violation of the Land Use Ordinance (LUO) for rural residential zoning

because he was operating a commercial business on the subject property. Rogers filed

an appeal with the ZBA. The ZBA denied Rogers' appeal in January 2001.

Before Rogers operated his trash hauling business, Rogers' father (the Senior Rogers)

operated a trash hauling business, T & R Associates. In both 1984 and 1996, the issue of the

non-conforming use of the subject property was raised, but the Town Board of Selectmen

apparently agreed to allow the commercial use to continue. When the issue came up in 1996, the

LUO was not enforced by the selectmen, who based their decision on the doctrine of equitable

estoppel.

In December 1999, Rogers was granted conditional use of the property for the

office portion of his trash hauling business and to park one truck. The Town then found

1

the violation in September 2000, apparently prompted by a complaint from one of Rogers' competitors.

## DISCUSSION

### Grandfathered Use

This court reviews the decision of the "Zoning Board of Appeals for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." Turbat Creek Preservation, LLC v. Town of Kennebunkport, 2000 ME 109, ¶11, 753 A.2d 489, 492. "To qualify for "nonconforming' or 'grandfathered' status, it must be shown that the use existed prior to the enactment of the zoning provisions prohibiting it and that the use was actual and substantial." Turbat Creek, 2000 ME 109, ¶13, 753 A.2d at 492 (internal quotation omitted). "In order to grandfather a nonconforming use, such use must reflect the nature and purpose of the use prevailing when the zoning legislation took effect and not be different in quality or character, as well as in degree, from the original use, or different in kind in its effect on the neighborhood." Id. Rogers has the burden to show that the property was grandfathered. See Town of Orono v. Lapointe, 1997 ME 185, ¶13, 698 A.2d 1059, 1062.

In this case, Rogers has failed to show that his use was grandfathered. The LUO provides that non-conforming uses in existence prior to March 4, 1972, may continue and be maintained. (LUO Art. I § D.) The record shows that the owners in 1972, the Coxes, used the property for farming purposes. (R. Tab 11; Tab 32; Tab 33.) Even in a light favorable to Rogers, the record indicates that property was only used "for a horse stable and riding ring, catering service, welding and metal fabrication business, contracting business, including sale of sand, the repair and construction of vehicles and trailers, as well as routine maintenance of vehicles." (R. Tab 32, at p.2.) The current use by Rogers is for operation of a trash-hauling business. (See R. Tab 34, at p.2.) This is a

2

substantial change from the nature and purpose of the use in 1972. See Turbat Creek, 2000 ME 109, ¶13, 753 A.2d at 492; see also Lapointe, 1997 ME 185, ¶13, 698 A.2d at 1062. In addition, even if the property is used only to store and perform minor maintenance to the vehicles which haul garbage, that use has a different effect on the neighborhood than the prior use. Id. Among other things, the neighborhood is faced with garbage hauling smells rather than farming smells.

In addition, Rogers has failed to show that a similar preexisting use by the Coxes was "actual and substantial." See Turbat Creek, 2000 ME 109, ¶13, 753 A.2d at 492. What was cited by Rogers and his counsel as the prior use of the property was a variety of activities, with the substantial use probably being that of a farm, or possibly metal fabrication, not the operation of a trash hauling business. The use that Rogers wants the property for, storing commercial trash hauling vehicles and minor repair and maintenance of the commercial vehicles, was not the actual and substantial use of the property in 1972. Therefore, Rogers has failed to show that the use was grandfathered.

**Equitable Estoppel**

Additionally, Rogers argues that the Town is equitably estopped from enforcing the Zoning Code. "[T]he doctrine of equitable estoppel rests on the factual determination that the declaration or acts relied upon must have induced the party seeking to enforce the estoppel to do what resulted to his detriment, and what he would not otherwise have done." City of Auburn v. Desgrosseilliers, 578 A.2d 712, 714 (Me. 1990) (internal quotation omitted). "One who has induced another to believe what is untrue may not later assert the truth." Id. "Furthermore, the reliance upon which estoppel is claimed must have been reasonable." Id.

While there are some indications in the record that the Town Selectman were aware that the Senior Rogers was led to believe that his use of the subject property was

allowed, (see R. Tab 10-12), equitable estoppel is not established in this case.[1] Under the statutes and the LUO, the Board of Appeals does not have authority to decide equitable matters. See Degrosseillers, 578 A.2d at 715 (rejecting the city's arguments and finding that unauthorized acts were ultra vires); Berry v. Bd. of Tr., Me. State Ret. Sys., 663 A.2d 14, 19 (Me. 1995) ("Administrative agencies are creatures of statute, and can only have such powers as those expressly conferred upon them by the Legislature, or such as arise therefrom by necessary implication to allow carrying out the powers accorded to them.") (quoting Valente v. Bd. of Envtl. Prot., 461 A.2d 716, 718 (Me. 1983)); see also, e.g., Black v. Zoning Bd. of Appeals – Town of Colchester, 1999 Conn. Super. LEXIS 1474, at *10 (stating that because the zoning board of appeals was not authorized by statute, the board could not decide issues of collateral estoppel); Fields v. Kodiak City Council, 628 P.2d 927, 931 (Alaska 1981) (stating that an administrative board should not decide equitable issues). In addition, the parties do not point to any provision that legally authorizes the Board of Selectmen to decide equitable matters. See 30-A

---

[1] The Superior Court, Cole, J., entered an Order granting the plaintiff's motion for a trial on the facts on March 18, 2002. In that Order, Justice Cole stated:

> This Court is not being asked in this motion to determine whether or not equitable estoppel applies in this case, but rather to determine whether the court needs new information to make such determination. Under the peculiar circumstances of this case, testimony of David Hennessey to explain the conflicting decisions of the Selectmen and the ZBA since he participated in both, would be helpful in making this determination. Furthermore, the transcripts of the ZBA meeting have a number of "inaudible" words or phrases, which Rogers could not have anticipated when he asked for a record of the meetings.

The only addition to the record after the Order was the June 26, 2003, submission of the Plaintiff's Appeal Brief with Attached Exhibits. The exhibits were a stipulation of facts and a copy of the Town's Land Use Ordinance.

Additionally, the Superior Court, Gorman, J., granted an Order on September 16, 2002, allowing the deposition of David Hennessy to fill in the inaudible sections of the ZBA transcripts. No part of the transcript has been added to the record.

M.R.S.A. § 2691; LUO at Art. V(B)(3); see also Salisbury v. Town of Bar Harbor, 2002 ME 13, ¶8, 788 A.2d 598, 601; Oeste v. Town of Camden, 534 A.2d 683, 684 (Me. 1987) (stating that it is well established that a planning board's power and authority is derived from statute).

Based on the record, as augmented after the Order approving a trial on the facts, equitable estoppel is not established in this case. Under Rule 80B(e), it is "the plaintiff's responsibility to insure the preparation and submission to the Superior Court of the record of the proceedings of the governmental agency being reviewed." The record shows that in 1984 the Town's counsel by memo advised the Selectmen that there were issues with the Senior Rogers' use of the property. (R. Tab 2.) In the memo, the Town's counsel stated, inter alia, that the use of the premises as a business office may be permitted subject to appeal under the Land Use Ordinance, and that the parking of more than two commercial vehicles may not be permitted. (Id.) The Town's counsel and counsel for the Senior Rogers corresponded about the issues. (R. Tabs 3-4, 7.) Counsel for the Senior Rogers opined that Rogers' use was grandfathered. (R. Tab. 7.) The Senior Rogers then corresponded in February 1985 with the Town's building inspector, inquiring about internal improvements to one of the structures on this property. (R. Tab 8.)

The record then jumps to 1995, when some of the citizens of the town complained to the Selectmen about T & R Associates' trucks. (R. Tabs 9-10.) The Town's counsel then sent memos to the Town Selectmen regarding the Rogers' property and uses. (R. Tabs 11, 13.) T & R Associates also sent a memo to the Town counsel. (R. Tab 12.) The minutes of the February 12, 1996, meeting disclose that the Board of Selectmen thought that they may be equitably estopped from enforcing the zoning code

against T & R Associates and voted unanimously not to take enforcement action based upon the doctrine of equitable estoppel. (R. Tab 14.)

The quality of evidence in the record is not sufficient to convince this court that the Town should be equitably estopped. First, the February 12, 1996, vote of the Board of Selectmen alone does not support a finding by this court that the town is estopped based on the totality of the circumstances. See F.S. Plummer Co. Inc. v. Town of Cape Elizabeth, 612 A.2d 856, 860 (Me. 1992) ("In assessing a claim of equitable estoppel, we review the totality of the circumstances involved, including the nature of the government official or agency whose actions provide the bases for the claim and the governmental function being discharged by that official or agency.") The Law Court has "held that a party seeking to estop the enforcement of a zoning ordinance bears a greater burden of proof because of the forceful public reasons that militate against restricting the enforcement of municipal zoning ordinances." Id. (internal quotations and alterations omitted).

In addition, the letters and memos from and on behalf of Rogers or the Senior Rogers in the record are self-serving advocacy documents. These letters and memos indicate that the use of the Senior Rogers' land has been in dispute for quite some time, but do not contain sufficient representations by the Selectmen or the Town that the use was allowed. No permits, or applications for permits, issued for business use of the property are in the record. (See R. Tab 11, at pp.2-3; Tab 15.) The record reflects that there may have been some arrangement for use of the property, and reliance on this arrangement. Town counsel Roger Therriault's investigation indicates that there was an arrangement between the Senior Rogers and his neighbors. (R. Tab 11 at 2.)[2] But with

_____

[2] Roger R. Therriault's memo to the Board of Selectmen states in part:

6

the absence of any documented record evidence, any reliance on the part of Rogers or the Senior Rogers was not reasonable.[3] Rogers has not met the "greater burden of proof" required of him to estop the Town from enforcing the LUO.

The entry is:

The decision of the West Bath Zoning Board of Appeals is AFFIRMED..

Dated at Portland, Maine, this ____ day of June, 2004.

Robert E. Crowley
Justice, Superior Court

---

Jane Powers had the most vivid recollection. She related a meeting that had occurred between Bill Rogers and the Board of Selectmen when the Town Office was located in the rear of the Fire Station. She believes that this was at a time when she was not on the Board. According to Town records, this would place this in 1987. She was at the meeting at the request of one of her neighbors. The result of the meeting was that the use would be allowed based on the fact that the site had been previously used commercially. The use was subject to several conditions. These included a restriction on the hours of movement of the vehicles between 5 A.M. and 5 P.M., no garbage being stored on site, and a 25 mile per hour speed limit on the Foster's Point Road. Selectman Hennessey recalls in general terms the same type of agreement with Mr. Rogers but is not sure as to the time frame. The other Selectmen contacted had no recollection of such an arrangement. What is a puzzlement is that this meeting apparently occurred in 1987, some three years after the original flurry of activity regarding the establishment of the use.

[3] In addition to the lack of documentation or other evidence of reliance, it should be noted that the plaintiff in this case was offered the opportunity to clarify the hearing record, which he did not do. The record is altogether insufficient to sustain this appeal.