STATE OF MAINE                                          SUPERIOR COURT
                                                         CIVIL ACTION
YORK, ss.                                         DOCKET NO. AP-07-007
                                                  GAB-YOR-10/26/2007

BRADLEY M. LOWN, SARAH V. LOWN
and ANNE E. LOWN,

                            Plaintiffs


v.                                          **ORDER ON 80B APPEAL**


TOWN OF KENNEBUNKPORT,                     DONALD L. GARBRECHT
                                             ' AW LIBRARY

                            Defendant                 JAN 30 2008


Before the Court is Plaintiffs Bradley M. Lown, Sarah V. Lown and Anne E.

Lown's (the "Lowns") appeal against Defendant Town of Kennebunkport ("Town")

pursuant to M.R. Civ. P. 80B of a decision issued by the Kennebunkport Zoning Board

of Appeals ("ZBA") denying their appeal of a notice of violation issued by the Town's

Code Enforcement Officer ("CEO"). Following hearing, the appeal is Denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Lowns own real estate located at 26 Agamenticus Avenue, in

Kennebunkport, Maine (the "Property").[1] The Property is situated in Cape Porpoise

within the Resource Protection Zone, The Shoreland Zone and the Critical Edge Zone

and is consequently subject to more stringent zoning regulations under the

Kennebunkport Land Use Ordinance ("LUO") in furtherance of the Town's objective of

protecting its coastline.

A pier was originally built on the Property in the late 1940's that consisted of five

or six sets of pilings supporting a wooden platform. The pier was re-built in April 2006.

---

[1]     Tax Assessor's Map 30, Block 003, Lot 32.

The pilings were still in existence when the pier was rebuilt, however the platform had decayed sometime during the 1980's. (Hearing Transcript 15:18-16:7.) When the platform was not in existence the pilings continued to be used periodically to moor boats and as a diving platform.

On or about November 1, 2006, the CEO issued the Lowns a Notice of Violation pursuant to Articles 5.7.C-4 of the LUO[2] for the "building of a dock/wharf/ramp/float in an area where docks/wharves/ramps/floats are not permitted." The Lowns complied with a request to remove the pier no later than December 1, 2006.

A timely appeal of the violation was made to the ZBA claiming that the pier[3] had existed and was used for more than 65 years and thus was grandfathered as a nonconforming, existing use pursuant to Article 8.1 of the LUO.[4] A public hearing was held on the matter on January 8, 2007.

---

[2] Article 5.7.C-4 states:

4.  Notwithstanding section 5.5.D, for the purpose of the protection of property against flood and/or storm damage and the protection of identified sensitive environmental habitats, accessory residential piers, docks, wharves, ramps or floats shall not be permitted along the following portions of the shore within the Town of Kennebunkport (Map and Lot numbers as taken from the Assessor's Maps as of April 1, 2001):

    a.  From the Town Line of Biddeford at Map 42-2-1A, southwestward along the shore to the Cape Porpoise Pier, at Map 2-2-7.

    b.  From the shoreward end of Turbat's Creek Road at Map 21-13-22, southwestward to the U.S. Government breakwater at Map 8-1-2.

[3] The Lowns note in their brief that the word "pier" was not used in the notice of violation, merely the words "dock/wharf/ramp/float," yet the Town relied upon the Ordinance definition of pier in its decision. The Ordinance definition of pier, however, sets forth the alternative terms of dock or wharf and expressly refers to a ramp and a float. Consequently the Lown's suggestion that this omission may be material is over technical. *See Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 12, 772 A.2d 256, 261.

[4] Article 8.1 states:

A nonconforming structure, use or lot is permitted to continue as it existed prior to the date such structure, use or lot became nonconforming under the provisions of this Ordinance, as amended.

After hearing the ZBA rejected the Lowns appeal finding that the original use of the pier was discontinued pursuant to Article 8.6 of the LUO[5] when the platforms were no longer usable. They acknowledged that the pilings were in continuous use and thus that use could continue. Consequently, the ZBA concluded that the Lowns' construction of the platforms, boardwalk and ramp were in violation of the LUO.

An appeal to this Court was subsequently filed.

## STANDARD OF REVIEW

As an intermediate appellate court, the Superior Court reviews the decisions of the Board of Appeals "directly for abuse of discretion, legal error, or findings unsupported by substantial evidence in the record." *Rowe v. City of S. Portland*, 1999 ME 81, ¶ 5, 730 A.3d 673, 675 (*citing Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995)). "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Forbes v. Town of Sw. Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186. The burden of persuasion is on the party challenging a board's decision to show that the evidence compels a different result. *Twigg*, 662 A.2d at 916. The Court must not substitute its judgment for that of a board on factual issues. *Id.*

The interpretation of an ordinance, however, is a question of law that is reviewed *de novo*. *Kurlanski v. Portland Yacht Club*, 2001 ME 147, ¶ 9, 782 A.3d 783, 786 (*citing Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 7, 772 A.2d 256, 259). That interpretation is guided by the "ordinances specific object and its general structure." *Id.* (*quoting Lewis v. Town of Rockport*, 1998 ME 144, ¶ 11, 712 A.3d 1047, 1049). An ordinance is construed to "avoid absurd, illogical or inconsistent results." *Id. (quoting*

_____

[5] Article 8.6 states:

> If a nonconforming use is discontinued for twelve (12) consecutive months, such use shall no longer be permitted.

3

*Wright v. Town of Kennebunkport*, 1998 ME 185, ¶ 5, 715 A.2d 162, 164). However, the Court's interpretation of the LUO regarding nonconforming uses is guided by the idea that the policy objective of "zoning generally is to abolish nonconforming uses as speedily as justice will permit." *Two Lights Lobster Shack v. Town of Cape Elizabeth*, 1998 ME 153, ¶ 5, 712 A.3d 1061, 1063. (*citing Nyczepir v. Town of Naples*, 586 A.2d 1254, 1256 (Me. 1991). Accordingly, "provisions of a zoning regulation for the continuation of [nonconforming] uses should be strictly construed, and provisions limiting nonconforming uses should be liberally construed." *Id.*

## DISCUSSION

### I. Did the ZBA Err in its Determination that the Pier Constituted a Nonconforming Use Under the LUO?

The Lowns concede that the pier is a nonconforming use under the LUO but assert that it has existed since the late 1940's and has been in continuous use since that time. Moreover, the ZBA erred in its analysis and determination that the pier's use was discontinued and its existence was not grandfathered. Thus, it is argued, the ZBA failed to consider if the Lowns should be permitted to enlarge, alter or repair the pier within the meaning of Article 5.7.C-21.

### a. Did the ZBA Insufficiently Consider Whether the Pier Qualified for Nonconforming Use Status?

The LUO grandfathering clause states that "[a] nonconforming structure, use or lot is permitted to continue as it existed prior to the date such structure, use or lot became nonconforming under the provisions of this Ordinance, as amended." LUO Article 8.1. This clause, however is limited by Article 8.6 which provides, "[i]f a nonconforming use is discontinued for twelve (12) consecutive months, such use shall

4

no longer be permitted." LUO Article 8.6; *See Turbat Creek Pres., LLC. v. Town of Kennebunkport*, 2000 ME 109, ¶ 12, 753 A.2d 489, 492.

These Ordinance clauses have been construed to mean that one seeking nonconforming use status must show that the "use existed prior to the enactment of the zoning provisions prohibiting it and that the use was 'actual and substantial.'" *Id.* ¶ 13, 753 A.2d at 492 (*citing Town of Orono v. LaPointe*, 1997 ME 185, ¶ 13, 698 A.2d 1059, 1062.) Moreover the use "must 'reflect the nature and purpose of the use prevailing when the zoning legislation took effect' and not be 'different in quality or character, as well as in degree, from the original use,' or 'different in kind in its effect on the neighborhood.'" *Id.* (*quoting Keith v. Saco River Corridor Comm'n*, 464 A.2d 150 (Me. 1983)).

The Lowns argue that the Town confused the concepts of a "grandfather clause" and "use" in their analysis of whether or not the pier qualified for nonconforming use status. That argument is not supported by case law. "Use" is a limiting factor in determining if a nonconforming structure qualifies for nonconforming use status under Article 8.1. *See Id.*

### b. Did the ZBA Erroneously Conclude That the "Use" of the Pier Had Been Discontinued?

The issue thus becomes, did the ZBA erroneously determine that the use of the pier had been discontinued for a period of twelve consecutive months, thus prohibiting any future use of the pier? The Lowns argue that the use of the pier never ceased as, even when no platform existed, the pier continued to be used to moor boats or as a diving platform. That use is consistent with the myriad of uses for a pier and thus, they contend, they should be permitted to repair the existing structure.

5

The Town counters that the use of the pier is only continuous if the entire pier, as it was originally constructed and as defined in the LUO, continued to exist. The LUO defines a pier as "a rigid platform ... supported by pilings .... " LUO Article 2.2.[6] Because the Lowns concede that the platforms had rotted in the 1980's, it is indisputable that the use of the platform was discontinued pursuant to Article 8.6. Thus the only possible ongoing use would be the use of the pilings.

The Town supports this argument with reference to a case that considered the rebuilding of a boathouse. *See Turbat Creek Pres.*, 2000 ME 109, 753 A.2d 489. In that case a landowner transformed a boathouse that no longer had a functioning toilet or hot water and which had been used for periodic overnight stays, into an "independent living unit." *Id.* ¶¶ 12, 15, 753 A.2d at 492-93. The *Turbat* Court concluded that, though the frequency or quantity of use may increase, the character or quality of that use may not. *Id.* ¶ 14, 753 A.2d at 492-93. Thus, because the use had changed and the utilities were substantially upgraded, the Court affirmed the ZBA decision denying nonconforming use status to the boathouse. *Id.* ¶¶ 15-16, 753 A.2d at 492-93.

The Lowns argue that *Turbat* is not an analogous case because the quality of use of the pier has not changed. More analogous was a permissible expansion of use when a hotel went from summer use to year round service. *See Frost v. Lucey*, 231 A.2d 441 (Me. 1967). The *Frost* Court held that "[w]here the original nature and purpose of the enterprise remain the same, and the nonconforming use is not changed in character, mere increase in the amount or intensity of nonconforming use within the same area does not constitute an improper expansion or enlargement of such nonconforming use." *Id.* at 449.

---

[6]     "When a statute specifically defines a term, we cannot redefine it." *Rockland Plaza Realty Corp.*, 2001 ME 81, ¶ 10, 772. A.2d at 261.

6

Because we must construe ordinances limiting nonconforming use liberally, this court concludes that the ZBA reasonably found that the more than 20-year lapse between the use of the platforms and the subsequent rebuilding of the pier, constituted a use that was both different in character and degree from the use of the pilings alone.

## II. Is Enforcement of Article 5.7.C Contrary to the Purpose of the LUO?

The purpose of Article 5 of the LUO is:

> To further the maintenance of safe and healthful conditions and general welfare; prevent and control water pollution; protect spawning grounds, fish, aquatic life, bird and other wildlife habitat, control building sites, placement of structure and land uses; and conserve shore cover, visual as well as actual points of access to inland and coastal waters and natural beauty.

LUO Article 5.1. The specific purpose of disallowing the construction of piers in the stated area is "the protection of property against flood and/or storm damage and the protection of identified sensitive environmental habitats." LUO Article 5.7.C-4.

The Lowns assert that no damage has occurred to date from storms, nor would the addition of platforms adversely affect the environment. While this represents the opinion of the Lowns, it was not otherwise supported at hearing and the ZBA was not bound to credit it.

## III. Is Article 5.7.C Unconstitutional?

The Lowns assert that the ordinance prohibiting docks or piers in their particular area of Kennebunkport has no rational purpose and is thus unconstitutional. "It is well established law that zoning ordinances are presumed to be constitutional. The burden is on the plaintiffs to show by clear and irrefutable evidence" that the law is unconstitutional. *Vella v. Trician Marine Corp.*, 677 A.2d 1051, 1056 (Me. 1996). The testimony of the CEO to the effect that the purpose of the ordinance was to protect

7

against flood or storm damage in a particularly vulnerable location provides rational support for the ordinance.

**Should the Reconstruction of the Pier be Permitted as a Repair Pursuant to Article 5.7.C-21?**

Finally, the Lowns argue that, pursuant to Article 5.7.C-21, they should be permitted to reconstruct the pier as a repair of less that 50% of the existing structure. Moreover, they argue that the pier should be considered independently as a structure and that its "use" is irrelevant. The argument was added at hearing before this Court.

The Town objected to the argument claiming that it was not specifically raised before the ZBA and thus it should be waived.[7] The Lowns counter that the supplemental argument is merely a variation on issues previously raised and argued. The Court will entertain the Lown's argument as supplemental to the argument stated above in Section I of this Order.

A threshold issue in this argument is whether, under the Ordinance, "structure" can be considered independently of "use," thus avoiding the limitations set forth in 8.6 whereby non-use for twelve months is deemed a discontinuance of use. The LUO definition of "use" is "[t]he purpose for which land or a building or structure is arranged, designed or intended, or for which it is occupied." LUO Article 2.2. Thus "use" is not limited to "how a property owner operates a business" or the like, as asserted by the Lowns in their supplemental brief; use is a broader term encompassing design, placement on the property and how it is occupied (used). Consequently, the

---

[7] *See New England Whitewater Center, Inc. v. Dept. of Inland Fisheries and Wildlife*, 550 A.2d 56, 61 (Me. 1988) (It would be contrary to the orderly procedure and good administration and unfair to those who are engaged in tasks of administration to decide an issue which [the Department] never had a fair opportunity to resolve prior to being ushered into litigation. (internal quotations omitted)).

Town has reasonably interpreted the Ordinance consistent with its general purpose to mean that use limits the permissiveness of nonconforming structures.

Even if a nonconforming structure could be considered independently of use, there is no evidence in the record of the fair market value of the pier, the extent of repairs or the cost of repairs. The Lowns request that the Court take judicial notice that the pilings are more than 50% of the pier structure, and thus replacement of the platforms would be permissive under Article 5.7.C-21 and not prohibited by Article 8.2.B-3. However, "a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." M.R. Evid. 201. The extent of repair, however is subject to reasonable dispute as the photographs that are in the record indicate that a substantial rebuild occurred, including replacement of the pilings. Thus, even if the structure could be considered a permissive nonconforming structure independent of use, there is no evidence in the record upon which to entertain the Lowns' argument regarding the degree of repair to the existing structure.

Moreover, as a matter of law, the Town's interpretation of the Ordinance construing "structure" and "use" as interdependent is both logical and consistent with the Ordinances overall structure. Consequently, this Court finds the Town did not err or abuse its discretion in concluding that the pier was a non-permissible nonconforming structure.

## Therefore, the entry is:

> The Lowns' Rule 80B appeal is Denied. The ZBA's decision dismissing the
> Lowns' appeal is Affirmed.

9

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Alfred, Maine this _____ day of _____, 2007.

10/24/07 _____

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
BRADLEY LOWN ESQ
COUGHLIN RAINBOTH MURPHY& LOWN
439 MIDDLE ST
PORTSMOUTH NH   03801


DEFENDANT:
AMY K TCHAO ESQ
DRUMMOND WOODSUM & MACMAHON
PO BOX 9781
PORTLAND ME   04104-5081