STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-14-231

CHARLENE MARTIN, and
TRACEY SCHAEFFER,

Plaintiffs,

**ORDER**

v.

VENTURA VENTURES APARTMENTS, LLC,

Defendant.

## I.    Background

### A. Procedural Posture

Plaintiffs Charlene Martin ("Martin") and Tracey Schaeffer ("Schaeffer") (collectively "plaintiffs") bring this action [1] against Defendant Ventura Ventures Apartments, LLC, seeking damages for a bed bug infestation in their apartment. Before the court is the defendant's motion for summary judgment.

### B. Facts

Plaintiffs Charlene Martin and Tracey Schaeffer were tenants in unit 301 at 10 King Street in Biddeford. 10 King Street is owned and maintained by the defendant. The plaintiffs moved into the building in May 2013, before the defendant purchased the property, and moved out in September 2014.

---

[1] Two of the originally-named plaintiffs are no longer parties.

1

In the fall of 2013, Martin complained about bed bugs in the unit. Defendant had the unit sprayed on October 7, 2013 and November 22, 2013. Defendant hired Ants Plus Pest Control ("Ants Plus") to spray each time. James Carter, an employee of Ants Plus who was hired to treat 10 King Street, testified at deposition that he generally sprays for bed bugs more than once, but this is not always necessary. In deciding how to proceed with exterminating the bed bugs at 10 King Street, the defendant deferred to the professional judgment of Ants Plus.

Ants Plus performed another treatment in unit 301 on June 5, 2014. Greg Cloutier, principal and owner of Ventura Ventures, LLC, told Martin and Schaeffer that the exterminator would return in four weeks for an additional treatment.[2] Carter testified he did not treat four weeks after the June 4 treatment because he could not access unit 301, but he could not remember why. (Carter Dep. 45-46.) According to Martin, the infestation continued through the summer of 2014 until she moved out in September 2014. (Martin Aff. ¶ 2.) She maintains that she made continued requests for additional spraying throughout the summer of 2014 until she left the unit, but there were no additional sprayings. (Id.) Carter inspected unit 301 on October 22, 2014 and saw no live bugs or evidence of a continued infestation. (Carter Dep. 47.) Carter testified that his failure to treat again after four weeks from the June 5, 2014 treatment did not change the bed bug situation because of the lack of evidence of a continued problem. (Id. 50.)

## II.   Discussion

Maine law imposes specific obligations upon landlords to address a bed bug infestation. The relevant statute provides:

---

[2] Cloutier's statement that an additional treatment would occur four weeks later is admissible as a non-hearsay admission by a party opponent or their agent. M.R. Evid. 801(d)(2).

2

A. Upon written or oral notice from a tenant that a dwelling unit may have a bedbug infestation, the landlord shall within 5 days conduct an inspection of the unit for bedbugs.

B. Upon a determination that an infestation of bedbugs does exist in a dwelling unit, the landlord shall within 10 days contact a pest control agent pursuant to paragraph C.

C. A landlord shall take reasonable measures to effectively identify and treat the bedbug infestation as determined by a pest control agent. The landlord shall employ a pest control agent that carries current liability insurance to promptly treat the bedbug infestation.

D. Before renting a dwelling unit, a landlord shall disclose to a prospective tenant if an adjacent unit or units are currently infested with or are being treated for bedbugs. Upon request from a tenant or prospective tenant, a landlord shall disclose the last date that the dwelling unit the landlord seeks to rent or an adjacent unit or units were inspected for a bedbug infestation and found to be free of a bedbug infestation.

E. A landlord may not offer for rent a dwelling unit that the landlord knows or suspects is infested with bedbugs.

F. A landlord shall offer to make reasonable assistance available to a tenant who is not able to comply with requested bedbug inspection or control measures under subsection 3, paragraph C. The landlord shall disclose to the tenant what the cost may be for the tenant's compliance with the requested bedbug inspection or control measure. After making this disclosure, the landlord may provide financial assistance to the tenant to prepare the unit for bedbug treatment. A landlord may charge the tenant a reasonable amount for any such assistance, subject to a reasonable repayment schedule, not to exceed 6 months, unless an extension is otherwise agreed to by the landlord and the tenant. This paragraph may not be construed to require the landlord to provide the tenant with alternate lodging or to pay to replace the tenant's personal property.

14 M.R.S. § 6021-A(A)-(F).

There is currently no case law construing the above statute. The key provision at issue here is whether the landlord took reasonable measures to address the bed bug infestation. 14 M.R.S. § 6021-A(C) Plaintiffs allege the landlord failed to take reasonable measures and seek to recover part of the rent they paid during the infestation and to recover the value of personal property they threw away as a result of the infestation.

From the plain language of the statute and the undisputed facts, the defendant took reasonable measures to treat the beg bug infestation. *See Town of Orono v. Lapointe,*

3

1997 ME 185, ¶ 11, 698 A.2d 1059 ("Unless the statute itself reveals a contrary legislative intent, the plain meaning of the language will control its interpretation.") It is undisputed that the defendant promptly hired a pest control company that treated and conducted inspections in the plaintiffs' apartment on at least three occasions during their tenancy and thereafter. Ants Plus was regularly engaged in treating the bed bug problem throughout the plaintiffs' tenancy.

As contemplated in the statute and as occurred here, decisions regarding where and how to treat the infestation rested with the pest control company. There is no dispute that in Carter's professional judgment, it was not necessary to treat unit 301 four weeks after the June 5, 2014 treatment because of the lack of evidence of a continued infestation. Plaintiffs attempt to dispute this fact, but this does not generate a disputed issue of material fact for trial. The statute plainly does not create a cause of action for tenants unsatisfied with the treatment plan devised by a pest control professional. By hiring Ants Plus and deferring to the individualized treatment plans devised for the units, the defendant fulfilled all obligations under the statute. 14 M.R.S. § 6021-A(C) ("A landlord shall take reasonable measures to effectively identify and treat the bedbug infestation *as determined by a pest control agent.*") (emphasis added). In any event, it is doubtful that the plaintiffs are entitled to a rent discount or compensation for personal property they chose to throw away. *See* 14 M.R.S. § 6021-A(F) (stating landlord is not obligated to pay for alternative housing or replace the tenant's personal property).

### III. Conclusion

For the reasons set forth above, the undisputed facts establish defendant took reasonable measures to treat the bed bug infestation in unit 301 by hiring Ants Plus and

deferring to their professional judgment. While the plaintiffs may have wanted additional treatments, the ultimate decision rested with the pest control company. Even if the infestation continued, the plaintiffs' own opinions as to the necessity of additional spraying does not create a genuine issue of material fact for trial or render the defendant liable under the statute. Summary judgment for the defendant is appropriate.

The entry shall be:

Defendant Ventura Ventures Apartments, LLC's motion for summary judgment is hereby GRANTED.

SO ORDERED.

DATE: October 16, 2015

_____
John O'Neil, Jr.
Justice, Superior Court

CV-14-231

ATTORNEY FOR PLAINTIFF:
ERIC COTE
PO BOX 350
SACO ME  04072

ATTORNEY FOR DEFENDANT:
STEPHEN BELL
MUNDHENK & BELL LLC
PO BOX 792
PORTLAND ME  04104-0792

z