**Daniel BOIVIN**

v.

**TOWN OF SANFORD et al.**

Supreme Judicial Court of Maine.

Argued March 6, 1991.

Decided April 10, 1991.

**1198**

John C. Bannon (orally), Elaine L. Clark, Murray, Plumb & Murray, Portland, for plaintiff.

Patricia McDonough (orally), Jensen, Baird, Gardner & Henry, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

The plaintiff, Daniel Boivin, appeals from a judgment of the Superior Court (York County, *Brodrick, J.*), affirming the decision of the Sanford Board of Appeals (Board), denying Boivin an occupancy permit for an auction barn located in a rural/residential zone of Sanford. Boivin contends that he is entitled to operate the auction barn, either as a preexisting, nonconforming, retail antiques business or as an accessory use customarily incidental to the antiques business. We find no error in the Board's denial of Boivin's application and affirm the judgment of the Superior Court.

Boivin, an experienced antiques retailer and auctioneer, contracted to buy a twenty-acre farm in Sanford with a barn that has contained a retail antiques business for over thirty years located in an area zoned rural/residential. Although the antiques business is presently grandfathered, all professional, retail, service and repair business uses are presently prohibited by the Sanford zoning ordinance (the Ordinance). *See* Ordinance § 3.6(D)(1). Boivin's application for a certificate of occupancy to use the property as an "auction barn facility" was denied by the Code Enforcement Officer as a prohibited change of use, and

Boivin appealed to the Board.[1] After a hearing, the Board rejected Boivin's contention that the proposed use was not a change from the grandfathered antiques business or was an accessory to it and held that an auction barn was a different nonconforming use.[2] Boivin sought review pursuant to M.R.Civ.P. 80B, and the Superior Court affirmed the Board's holding. This appeal followed.

■ We review a decision of a board of appeals directly for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. A plaintiff seeking to overturn such a decision has the burden of showing that the evidence compels a contrary conclusion. *Tompkins v. City of Presque Isle*, 571 A.2d 235, 236 (Me.1990). A board of appeals has discretion in determining whether an activity is within the scope of a permitted, nonconforming use. *Mason v. Crooker-Mulligan*, 570 A.2d 1217, 1220 (Me.1990). "We may not ... substitute our judgment for that of the Board." *Tompkins*, 571 A.2d at 236. If there is relevant evidence in the record to reasonably support the Board's conclusion, the fact that the record contains inconsistent evidence or inconsistent conclusions could be drawn from the evidence does not invalidate the Board's holding. *Mack v. Municipal Officers of Town of Cape Elizabeth*, 463 A.2d 717, 720 (Me. 1983).

■ In general, a mere increase in the intensity or volume of business is not an unlawful expansion of a preexisting, nonconforming use, which is protected from an uncompensated public taking. In contrast a new use or a use of a different character can be proscribed by a zoning ordinance.[3] *Frost v. Lucey*, 231 A.2d 441, 447–48 (Me.

1967). We have previously stated that a questioned use may not be grandfathered if it fails to reflect the nature and purpose of the preexisting, nonconforming use, if it is different in quality or character as well as in degree, or if it is different in kind in its effect on the neighborhood where it is located. *Keith v. Saco River Corridor Commission*, 464 A.2d 150, 155 (Me.1983). The determination whether a questioned use meets this test necessarily involves consideration of the particular facts of each specific case. *Frost*, 231 A.2d at 448; *Mason*, 570 A.2d at 1220.

■ Here, the Ordinance explicitly prohibits changing a preexisting, nonconforming use to any other nonconforming use. Ordinance § 2.3. The Board heard evidence from which it reasonably could have concluded that Boivin's auction barn would change the nature and purpose or the quality and character of the existing antiques business, or is different in kind in its effect on the neighborhood. This evidence included the testimony of the Code Enforcement Officer about business practices in the area, the testimony of Boivin himself about his plans to rearrange the barn and change its source of inventory, and the testimony of neighbors about the local impact on the area of an auction barn with its incidents of increased traffic and the congregation of large groups of people in one area. We cannot say that the Board was compelled to find that the preexisting use as a retail antiques business would remain unchanged by the operation of an auction barn.

Boivin also argues that the auction barn is merely an accessory use that may be operated in conjunction with the lawfully grandfathered antiques business. The Ordinance defines an accessory use as a "subordinate use" that is "customarily incidental to the ... principal use of the land,"

---

1. Boivin also sought a variance to operate the auction barn which the Board denied after hearing. Boivin did not seek judicial review of that denial.

2. Section 2.3 of the Ordinance provides in pertinent part:
   Any use of land, or any building, structure, or parts thereof, legally existing at the time of the adoption of this Ordinance, or at the time a zone is changed by amendment hereafter

which does not conform to the use requirements of this Ordinance or its amendments, may not be changed to any other non-conforming use, and may not be extended, reconstructed, enlarged, or structurally altered....

3. Contrary to Boivin's contention the policy of the zoning laws continues to be to abolish nonconforming uses as speedily as justice will permit. *Nyczepir v. Town of Naples*, 586 A.2d 1254, 1256 (Me.1991).

and permits an accessory use in a zone where its principal use is permitted. Ordinance §§ 2.2, 3.1. We have considered a similar ordinance definition in the context of a principal use that did conform to the local zoning requirements. In that case we observed that an accessory use may be lawful if it is dependent on a principal use, has a reasonable relationship with that primary use, and is by custom "commonly, habitually and by long practice established as reasonably associated with the primary use." *Town of Shapleigh v. Shikles,* 427 A.2d 460, 465 (Me.1981). We noted that the application of this definition to a particular situation presents questions of fact for determination by a board of appeals.

Here, the Board's conclusion that an auction barn was a different use from the existing antiques business necessarily rejected Boivin's contention that it was an accessory use. We need not decide whether Maine law in general, or the Ordinance in particular, permits an accessory use to grow from a preexisting, nonconforming use because we agree with the Board that this was not an accessory use. The Board heard evidence from which it could have concluded that auction barns are not customarily incidental to antiques businesses in the Sanford area. Further, Boivin's notice of administrative appeal projected that the business of the auction barn would be three to six times the volume of the antiques business. On its face, the auction barn is neither subordinate nor incidental to the principal use as an antiques business, and thus cannot be a lawful accessory use.

Because there was substantial evidence in this record to support the Board's conclusion that an auction barn would constitute a change in the present nonconforming use of an antiques business, the Board did not err in denying Boivin's application.

The entry is:

Judgment affirmed.

All concurring.