STATE OF MAINE
YORK, ss.

STATE OF MAINE
COUNTY OF YORK
CLERK'S OFFICE
RECEIVED

JUN 9 11 45 AM '00

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-99-047
GAB-YOR -6/9/2000

DONALD L. GARBRECHT
LAW LIBRARY

JUN 13 2000

RICHARD A. BEOTE, *et al*

    Petitioners

    v.

THE TOWN OF KENNEBUNKPORT,

    Respondent

DECISION AND ORDER

This appeal pertains to the Town of Kennebunkport Planning Board's approval of a Site Plan Application submitted by the Town of Kennebunkport. On June 16, 1999 the Board approved the Town's application to locate a new town hall, fire station, along with a public parking lot and public restrooms at 30 North Street in Kennebunkport ("the Property"). The proposed structures and parking lot would be located in the Village Residential Zone as set out in the Kennebunkport Zoning Ordinance.

Section 2B of the Ordinance lists the permitted uses in the Village Residential Zone. Among those listed are single family residences, churches and community uses. From 1964 to 1995, the Property was used as a church. In the mid-1980's the Town reached an agreement with the church to allow transient vehicles and buses to use the church parking lot when not being utilized by the church.

In May of 1997 the Roman Catholic Diocese of Maine sold the Property to the Town. Shortly thereafter the Town began to hold municipal meetings in the former church building. In June of 1997 it sought and later obtained approval from the Planning Board to utilize the Property as a Community Use, including handicapped toilets. The Town however failed to comply with the Ordinance by obtaining the required use permit from the Code Enforcement Officer. On March 31, 1999 the Town submitted a Site Plan Application to the Board to build a new town hall and fire station at the Property. Public parking and restroom facilities were also part of the plan. The proposal was vigorously opposed by Petitioners, whose residences abut the Property at 30 North Street. Petitioners expressed concern that the proposed uses of the Property would adversely affect the use and enjoyment of their residences as well as result in a devaluation of their properties.

Following several hearings on the application, the Planning Board voted 4 to 0 to approve the Site Plan Application with certain qualifications. The Board's decision was signed on June 23, 1999. It approved the use of the Property for a town hall and fire station. Additionally, the Board's decision authorized transient parking for 73 vehicles, including eight spaces for buses and RVs. Public restrooms, technically located within the town hall but intended primarily for transient use, were also approved. Petitioners subsequently filed this Rule 80B appeal, requesting the Court to vacate and remand the Board's decision.

DISCUSSION

## The Standard of Review

Pursuant to M.R. Civ. P. 80B, this Court has authority to hear appeals from a municipality's zoning board. The Court reviews the Board's decision for abuse of discretion, errors of law, or findings unsupported by substantial evidence. *See Turbat Creek Preservation, LLC v. Town of Kennebunkport*, 2000 ME 109, ¶ 11, --- A.2d ----,----. The substantial evidence standard requires the Court to examine the entire record "to determine whether on the basis of all the testimony and exhibits before the [board] it could fairly and reasonably find the facts as it did." *Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990). To prevail, Petitioners must show "not only that the Board's findings are unsupported by record evidence, but also that the record compels contrary findings." *Total Quality v. Town of Scarborough*, 588 A.2d 283, 284 (Me. 1991).

## Did the Board err when it determined that transient and bus parking are grandfathered uses?

Commercial and transient parking are not listed in Section 2B of the Ordinance as permitted uses in the Village Residential Zone. Such uses are permitted only in the Dock Square and Free Enterprise Zones. Accordingly, the use of the Property for transient or bus parking is valid only to the extent that such uses are grandfathered or accessory to a legally permitted use.

With respect to the grandfathering issue, Section 8.1 of the Ordinance applies. It states that "[a] nonconforming structure, use or lot is permitted to continue as it existed prior to the date such structure, use or lot became nonconforming under the

3

Provisions of this Ordinance, as amended." To qualify as a grandfathered use, "it must be shown that the use existed prior to the enactment of the zoning provisions prohibiting it and that the use was 'actual and substantial.'" *Turbat Creek Preservation LLC v Town of Kennebunkport.*, 2000 ME 109, ¶ 13, ----A2d. ---, ---, citing *Town of Orono v. LaPointe,* 1997 ME 185, ¶ 13, 698 A.2d 1059, 1062.

Did the Board err when it found that non-conforming uses were in fact occurring prior to 1972, the effective date of the Ordinance? The evidence of pre-ordinance usage of the Property for transient and bus parking initially appears conflicting. What is clearly undisputed is the fact that prior to 1972 the Property was used first as a seasonal opera house, then later as a church. During its days as an opera house, shuttle buses were parked at the Property during performances. When the Property was purchased by the Roman Catholic Diocese, parking was permitted in conjunction with church functions.

The Court finds no substantial evidence in the record of transient or commercial parking taking place at the Property prior to 1972. Rather, the evidence merely demonstrates that the pre-ordinance parking of vehicles was either accessory to the church or the opera house. Testimony and letters contained in the record, including that of Father Steven Mulkern, pastor of the church from 1970 to 1986, strongly suggests that transient and bus parking occurred only after 1972. The Court concludes that the proposed use of the parking lot for transient vehicles and commercial parking does not "reflect the nature and purpose of the use prevailing when the zoning legislation took effect." *Id.*

4

The Town argues that the proposed use of the Property for transient and commercial parking is grandfathered because it will not change its essential nature or purpose. The Town's argument is similar to that of the petitioner who unsuccessfully appealed the Kennebunkport Zoning Board of Appeals' decision in *Turbat Creek Preservation, LLC v. Town of Kennebunkport..* In *Turbat Creek*, the Law Court affirmed the Board of Appeal's decision that a boathouse used as a residential unit violated the Town's Land Use Ordinance. Before the Ordinance went into effect, the boathouse had been used for occasional overnight stays. Turbat Creek argued that using the property for an unlimited number of overnight stays should be recognized as grandfathered because the existing use was merely an expansion of the previous nonconforming use. *Id.*

The Law Court rejected Turbat Creek's argument, finding that the existing use of the boathouse effected more than a mere increase in the frequency or usage. Turbat Creek had used the property so "far in excess of the previous occasional overnight stays" that it had in essence converted the boathouse to a new, fundamentally different use. Id. ¶ 15,-----, A2d. ----,------. In the instant case, the approved use of the Property for transient parking greatly expands the level and intensity from any use in effect prior to the implementation of the Ordinance. The proposed use is of such a fundamentally different character as to be ineligible for grandfathering.

Additionally, the Court finds that the Board erred as a matter of law when it considered the character and intensity of the existing parking situation in

5

determining the impact of the proposed use of the Property on the abutting property owners.[1] The current use of the Property is of questionable legal validity. Although the Town reached an agreement with the church in the mid-eighties to allow public parking at the Property, such agreement was not in compliance with the procedural requirements of the Ordinance. It is doubtful whether such a use would comply with the Ordinance's restriction of commercial and transient parking to the Dock Square and Free Enterprise Zones.

Furthermore, when the Town submitted the 1999 Site Plan Application, the Property was no longer even being used as a church. No existing use, church or otherwise is cited in the designated section of the Town's application; the space in the application in which the Town is supposed to list the current use is simply left blank. Accordingly, the Board was bound to consider the proposed uses of the Property as new conditional uses, unrelated to the church use which had ended in 1995.[2]

Did the Board abuse its discretion when it determined that the proposed parking facilities are accessory to the Town Hall, and not prohibited as a commercial parking in the Residential Zone?

---

[1] Throughout its findings of facts, the Board finds that the proposed uses will have no adverse effect on the value or use and enjoyment of the abutters property.

[2] When the Board approved the Property for Community Uses in 1997, such approval was invalidated by the Town's subsequent failure to obtain the mandated use permit authorizing the change. This procedural omission caused the new use to expire. Consequently, the Board should have found that no legally cognizable uses existed and the Property should have been deemed vacant when it considered the 1999 Site Plan Application.

The Town argues that even if public parking is not a grandfathered use, it is still permitted as an accessory use to the Town Hall. The Ordinance defines an accessory use as one which is "customarily incidental to..the principal use.. [and which] ..shall not subordinate the principal use." *See Record* at 8.

Construing similar language in an ordinance in *Boivin v. Town of Sanford*, 588 A. 2d 1197, 1200 (Me.1991), the Law Court noted that it had previously observed in *Town of Shapleigh v. Shikles*, 427 A.2d. 460, 465 (Me. 1981) " that an accessory use may be lawful if it is dependant on a principal use, has a reasonable relationship with that primary uses, and is by custom 'commonly, habitually and by long practice established as reasonably associated with the primary use."*Id.*

This is a closer question than the issue of whether public parking is a grandfathered use. The Board approved public parking as an accessory use to the town hall and the fire station. The record indicates however that the principal use of the parking lot is for transients and buses. For example, the traffic study submitted by the Town as part of its 1999 application stated that in addition to the 26 spaces required for the town hall and the 11 required for fire station parking, the numerous remaining spaces were for transient and tourist parking that had been occurring since 1984.[3] During the public hearings, the Town repeatedly distinguished the proposed uses of the parking lot, including transient and commercial parking. The Court finds that tourist and transient parking cannot reasonably be construed as accessory to the town hall and fire station.

---

3 Such parking would have occurred 12 years after the 1972 effective date of the Ordinance, which prohibits such parking in the Village Residential Zone.

7

<u>Did the Board abuse its discretion when it determined that the proposed public restrooms are permitted in the Village Residential Zone?</u>

The proposed town hall will have four restroom facilities. Two of the bathroom facilities will be located inside the town hall, with one designated for municipal employees, and the other for patrons conducting municipal business. These uses are accessory in nature, subordinated and related to the use of the proposed town hall.

The remaining restrooms will also be technically located within the town hall, by virtue of the fact that they are structured as enclosed hallways attached to the main building. In contrast to the other facilities, however, they will not be accessible from the interior of the town hall. The record shows that these restroom facilities, which will be situated next to the parking lot, are structurally designed to limit town hall access by transients and tourists. Comments made by members of the Board also compel the finding that the bathrooms are intended as a public hospitality facility, and not an accessory use.

The Court finds that the Board erred as a matter of law when it concluded that the proposed toilet facilities are permitted within the Village Residential Zone. Public hospitality facilities, including public restroom facilities[4] are not allowed within the Village Residential Zone. The Ordinance effectively prohibits public hospitality facilities by not specifically including them as either permitted or conditional uses in the Village Residential Zone. The Ordinance's prohibition is not

---

4 Public restrooms are encompassed within the definition of a Public Hospitality Facility. *See* Article 2 of the Ordinance.

8

ambiguous; it may not be circumvented by categorizing the restrooms as an accessory use.

Wherefore, the entry shall be:

Rule 80B appeal granted; Planning Board decision vacated, case remanded.

Date: June 9, 2000

G. Arthur Brennan
Justice, Superior Court

PLAINTIFFS:
DAVID P SILK ESQ
CURTIS THAXTER STEVENS BRODER & MICOLEAU
PO BOX 7320
PORTLAND ME   04112-7320

GORDON C AYER, ESQ
90 SPENCER DR
WELLS ME   04090


DEFENDANTS:
WILLIAM H DALE ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME   04112-4510