STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-04-016

MAINE STREAM SEAFOOD, INC.
and CLINTON C. RAY

Appellants / Plaintiffs,

v.

**DECISION AND JUDGMENT**

PORTLAND FISH EXCHANGE

Appellee / Defendant

This is an appeal pursuant to M.R.Civ.P 80B

## I. BACKGROUND

On March 2, 2004, the Portland Fish Exchange (Exchange)[1], acting through its general manager, suspended Maine Stream Seafood's (Maine Stream) privileges as a seat-holder at the Exchange effective that day. The manager indicated that the suspension was occurring for two reasons: (1) evidence that Maine Stream arranged for theft of product from Exchange buyers, and (2) evidence that Maine Stream arranged to have the weight of the product it shipped from the Exchange deliberately mislabeled. The letter of suspension also indicated that Maine Stream employees Clinton Ray and Craig Carrington were barred from the Exchange. The letter stated that the recipients would have the opportunity to respond to issues raised in the letter.

Plaintiffs' counsel immediately wrote to the Exchange, demanding that the plaintiffs be allowed the chance to hear and respond to the allegations against them.

---

[1] The Portland Fish Exchange is a quasi-governmental organization that coordinates the wholesale distribution of fresh fish brought into the Portland market by commercial fishermen. It is operated under the supervision of the City of Portland. A Rule 80B appeal is appropriate.

Pursuant to the Exchange's own rules, the manager can suspend Maine Stream's seat under "extraordinary circumstances," which the plaintiffs allege was not the case here. Furthermore, the plaintiffs allege that the suspension violated procedural fairness and due process.

Plaintiffs' counsel sent the Exchange another letter several days later asking that the Exchange explain what had been said about the plaintiffs to cause the suspension. The manager responded to the plaintiffs that there was other evidence of untoward activity by Maine Stream, including that Maine Stream: (1) received one order of blended seafood, (2) received parts stolen from another buyer and (3) warehoused seafood coming from outside the Exchange at the Exchange in violation of Exchange policy.

On March 9, 2004 the Board of Directors of the Exchange held a special meeting pursuant to Article V, Section 4 of the bylaws of the Portland Fish Exchange. Plaintiffs were informed that there would be a meeting, but were not informed of the agenda or the type of action that could result. On the day of the hearing, for the first time, the Exchange sent an e-mail to plaintiffs containing detailed information regarding the charges against them. The e-mail contained the names of employees whom the Exchange claimed would give damaging testimony aboutthem.. The Exchange also stated that it had incriminating videotapes.

At the meeting, the management of the Exchange also had another written report that contained other information. A copy was given to plaintiffs at the beginning of the hearing. The report stated that the fired Exchange employees were acting on behalf of Maine Stream (the employees had been terminated for fish theft). In the report four Exchange employees state that Gronlund (one of the fired employees), who ran the weighing station, was performing the skimming. Three of the employees implicated

2

Maine Stream and Clinton Ray. Two of the employees indicated that they had seen money pass from Ray to one of the terminated employees. All of the Exchange employees interviewed believed that the terminated Exchange employees were engaged in skimming and that Maine Stream had benefited from the skimming.

The report also stated that on the day that the Exchange employees were terminated Clinton Ray arrived at the Exchange manager's office and stated that he had told Exchange employees to weigh his boxes short[2] and he hoped that no one would be fired because of that. At the time of this conversation, only one of the two employees had been terminated.

At the hearing, plaintiffs' counsel objected to the proceeding because the plaintiffs were not given sufficient notice of the charges against them. Plaintiffs complained that they were not allowed the chance to review evidence or interview witnesses before the hearing. The Board chose to proceed with the hearing. At the end of the hearing, several members indicated that they would like to review the videotape evidence, however the Board finally decided not to view the tapes and rather to proceed on their manager's word. At the conclusion of the hearing, the Board voted to suspend Ray and Carrington from the Exchange for life and Maine Seafood for three years.

Plaintiffs allege that pursuant to Section 2.8, the Board may suspend a seat holder because of a violation of the rules, failure to pay the Exchange in accordance with the rules, or for other good cause as determined by the Board. Plaintiffs claim that the Board does not have any rules and/or regulations relevant to labeling and weighing fish and that furthermore it was the Exchange's own employees who packed and

_____

[2] There is debate as to exactly how short Ray requested that the boxes be weighed. The Board seized on 55 pounds, but one of the terminated Exchange employees said that Ray requested that the fish be packed in the 55-60 pound range. The Exchange manager did admit that there was often mayhem on the floor and that it was difficult to produce consistent weights from box to box. Most boxes packed (in boxes labeled 60 lbs) range from 57-61 pounds.

3

weighed the fish, not Maine Stream's employees. Plaintiffs also contend that if they had been told that their request to short weight boxes was against the Exchange's rules, they would have accepted that, but no one ever told them that it was until they were suspended.[3]

Plaintiffs allege (1) that the hearing process lacked procedural fairness and was a violation of due process; (2) that the Board acted improperly in suspending plaintiffs; and (3) that the Board and the manager were biased against the plaintiffs

## II. STANDARD OF REVIEW

In a Rule 80B appeal, this court must decide whether, in the decision below, there was an abuse of discretion, an error in interpretation of the law, or findings not supported by substantial evidence in the record. *Senders v. Town of Columbia Falls*, 647 A.2d 93, 94 (Me. 1994), *Grant's Farm Associates, Inc., v. Town of Kittery*, 554 A.2d 799, 801 (Me. 1989). The board's decision is affirmed unless it is unlawful, arbitrary, capricious or unreasonable. *Senders*, 647 A.2d at 94. The findings will not be disturbed if supported by substantial evidence contained in the record, such that a reasonable person would accept as adequate to support the final conclusion. *Palesky v. Town of Topsham*, 614 A.2d 1307, 1309 (Me. 1992). A court cannot substitute its own judgment for that of the board. *Boivin v. Town of Sanford*, 588 A.2d 1197, 1199 (Me. 1991). If there is evidence in the record to support the board's conclusion, the fact that the record contains inconsistent evidence or could be used to support a different conclusion, does not negate the board's holding. *Id.*

---

[3] The court is not an independent fact-finder. It is within the discretion of the Board to reject testimony that on its face appears to be incongruous; i.e., that they were not aware that it was against the rules to short-weight the boxes.

4

# III. DISCUSSION

Due process is flexible and requires such procedural protections as the situation demands. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Due process requires that the proceedings are fundamentally fair to the person involved. The *Mathews* court elaborated on the amount of due process that is appropriate:

> the specific dictates of due process generally require consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Though there are no specific procedures that must be followed in order to ensure fairness, when there is a significant right at stake, the Law Court has set out a number of factors to consider in determining if a particular proceeding or process lacked due process. There must be: (1) notice of the issues; (2) an opportunity to be heard; (3) the right to introduce evidence and present witnesses; (4) the right to respond to claims and evidence; and (5) an impartial fact finder. *In re Kristy Y.*, 2000 ME 98, ¶ 7, 752 A.2d 166, 169. Because this hearing involved Ray's livelihood and the continued ability of Maine Seafood to operate, there is a significant right at stake.

Each of the five factors will be addressed in turn, however it is appropriate to keep in mind the parameters that the Board was operating under at the time:

> Section 2.8 <u>Suspension</u> "Seat holder privileges may be suspended at any time by action of the Board of Directors because the violation of these Rules by the seat holder or its representative, failure to pay the Exchange in accordance with these Rules, or for other good cause as determined by the Board of Directors. In extraordinary circumstances, seat holder privileges may be immediately suspended on an interim basis by the decision of the Exchange Manager. Interim suspensions shall terminate 10 (ten) days, after the commencement thereof, unless the Board of Directors

of the Exchange, shall, prior to such time, has ordered the privileges suspended."

Suspension can take place for any "good cause" as determined by the Board of Directors.

## A. Notice of the issues

The plaintiffs allege that they did not receive adequate notice of the charges. They also did not receive the report given to the Board until the day of the hearing, which the plaintiffs allege prevented them from adequately to meet the accusations. Additionally, a new charge was added to the list at the hearing.

The initial letter stated that the plaintiffs were being suspended due to: (1) evidence that Maine Stream arranged for theft of product from Exchange buyers, and (2) evidence that Maine Stream arranged to have the weight of product it shipped from the Exchange deliberately mislabeled. Plaintiffs allege that this was not adequate notice. However, at the hearing plaintiffs did arrive with affidavits from customers, stating that the customers were happy with Maine Seafood and if there ever was a weight disparity, the appropriate credit was given to the customer.

Notwithstanding their argument, Maine Seafood had enough notice to get the affidavits, as well as affidavits from former Exchange employees, which stated that the plaintiffs were not involved in the theft or skimming of any fish. Although the notice may not have been as complete as the plaintiffs would have liked and one new charge was added at the hearing, they were still able to discern enough from the notice to be prepared to present evidence from its customers regarding product weight.

Even though credit mau have been given to customers on complaint of a weight disparity, the corrective action came on complaint or notice from the customer.

6

## B. Opportunity to be heard

The plaintiffs argue that because they were not allowed to view the surveillance videos, speak to the employees who alerted the Exchange and because they did not know that they were permitted to bring witnesses to testify, they were not able to "heard" and adequately defend themselves.

The Board points to the fact that plaintiffs were represented by counsel, were allowed opening and closing arguments, were able to present three witnesses and additional written evidence, and were able to cross examine witnesses against them.

This is sufficient opportunity to meet the allegations.

## C. The right to introduce evidence and present witnesses

The plaintiffs allege that they did not know that they could present additional witnesses so they relied on affidavits. They claim they also wanted to cross examine the Exchange employees who originally reported their alleged misconduct. Additionally, plaintiffs claim they would have presented the two Exchange employees who were fired for actual fish misconduct and these employees would have stated that Maine Stream was not involved in their activities. Plaintiffs allege that their case was injured because the Board did not consider the affidavits in the same light as it considered in-person testimony.

It was up to the Board to decide whether to accept affidavits from Exchange employees who were fired for the very same thing that the plaintiffs and to decide the weight to be given to them. On one hand, the Board could view them in the light that the affiants were fired for the same type of conduct and statements that plaintiffs were not involved would be taken seriously; on the other hand, however, the Board could disregard the affidavits of employees who were fired due to dishonesty. The weight to

7

be given to these statements, if any, is clearly within the decision-making role of the Board.

The Board points to the fact that the plaintiffs presented three witnesses and had a fourth party present who was not called to testify and that plaintiffs presented affidavits from satisfied customers. The Board argues that plaintiffs were provided with ample opportunity to present their case through written and live testimony. The court agrees. This mitigates against plaintiffs' claim that they did not know they could present witnesses and demonstrates that plaintiffs were able to prepare for the hearing.

## D. The right to respond to claims and evidence

The fact that the plaintiffs were not allowed to see the videos at issue and were not permitted to cross examine the Exchange employees who reported them frustrated the plaintiffs' ability to adequately respond to the claims against them. They were not allowed to respond to the evidence that came from either the Exchange employees or from the surveillance videos except to say that those pieces of evidence were false. Evidently the only persons to view the surveillance videotapes were the Exchange manager, the operations manager and the city's counsel.

Several Board members stated that they wanted to view the tapes, but another stated that he would rely on the word of the Exchange manager. Another Board member likened the incident to "what brought down Enron" and stated that the Exchange had to act quickly to salvage its reputation. However, the Exchange's manager testified that there was mayhem on the packing floor and a buyer who was there testifying on behalf of the Exchange discussed the numerous discrepancies with his own orders.

The plaintiffs were aware of what the manager told the Board and of the nature of the charges and did respond.

8

## E. The right to an impartial fact finder

There is no specific evidence that the Board was biased against the plaintiffs. It is clear that the Board relied on the word of the Exchange manager — both in regard to the videotapes that the Board chose not to view and in the evidence from unnamed Exchange employees. The court does not substitute its own judgment for that of the Board. The record does show substantial evidence that reasonable persons would consider to support the decisions to be made.

## IV. CONCLUSION

On review, this court will look at the record of evidence that the Board did have before it and determine whether that is sufficient.

Although fundamental rules of fairness are applicable, the rules of evidence are not applicable and the Board can rely upon evidence commonly used to make important decisions and which the Board believes to be trustworthy.

The fact that the Board did not view the tape or separately interview live witnesses does not mean that it lacked sufficient evidence on which it could base its decision.

## V. DECISION AND JUDGMENT

The clerk will make the following entry as the Decision and Judgment of the court:

- The decision of the Board of the Portland Fish Exchange is affirmed.

SO ORDERED.

DATED:     May 22, 2006

Thomas E. Delahanty II
Justice, Superior Court

9

Date Filed _04-02-2004_    Cumberland    Docket No. _AP-04-16_
County

Action _80B Appeal_

MAINE STREAM SEAFOOD, INC.    PORTLAND FISH EXCHANGE
CLINTON JOSEPH RAY

vs.

| Plaintiff's Attorney | Co-counsel: | Defendant's Attorney |
|---|---|---|
| David J. Perkins, Esq. | Gerald V. May, Esq. | Penny Littell, Esq. |
| Perkins Olson, P.A. | 30 Milk Street | Charles A. Lane, Esq. (w/drawn) |
| Thirty Milk Street | PO BOX 449 | City of Portland |
| P.O. Box 449 | Portland, ME | Portland City Hall |
| Portland, ME 04112-0449 | 04112-0449 | 389 Congress Street |
| 207-871-7159 | 207-871-7159 | Portland, ME 04101 |
| | | 207-874-8480 |

| Date of Entry | |
|---|---|
| 2004 | |
| April 5 | Received 04-02-04. |
| " | Plaintiffs' 80B Appeal with Exhibits A-1 filed |
| " | Plaintiffs' Motion for Trial with Offer of Proof of Facts That Will be Submitted at Trial, and Request for Hearing filed. |
| April 8 | Received 4-8-04. Summons filed showing officer's return of service on 4-5-04 upon Defendant to Gary Wood, Esq. |
| April 26 | Received 04-26-04, Defendant's Objection to Plaintiffs' Motion for Trial filed. Answer of Defendant filed. |
| April 28 " " | Received 04-28-04. Plaintiff's Reply to Defendants' Objection to Plaintiffs' Motion for Trial filed. |
| May 10 | Received 5-10-04. City of Portland's documentary evidence presented at 3-9-04 hearing before the Board of Directors of the Portland Fish Exchange in regard to Maine Stream Seafood Inc, with Documents 1-7, A-T filed. |
| June 11 | Received 6-11-04. Transcript of 3-9-04 Public Hearing filed. |
| July 30 | Received 07-30-04: Plaintiffs' Motion to Expedite Hearing on Motion for Trial filed. |
| Aug. 2 | On 08-03-04: As to Plaintiffs' Motion to Expedite Hearing on Motion for Trial: The Court concludes that hearing on plaintiffs' Motion for Trial is not necessary and therefore, Plaintiffs' Motion to Expedite Hearing on Motion for Trial is DENIED. (Humphrey, J.). |

MAINE STREAM SEAFOOD, INC. and CLINTON JOSEPH RAY vs. PORTLAND FISH EXCHANGE.

Docket No. AP-04-16

| Date of Entry | |
|---|---|
| 2004 Aug. 3 | Received 08-03-04: Order on Plaintiffs' Motion for Trial filed. (Humphrey, J.). Pursuant to M.R.Civ.P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporationg it by reference and the entry is Plaintiffs' Motion for Trial of the Facts is DENIED. On 08-03-04 Copies mailed to David Perkins, Penny Littell and Charles A. Lane, Esqs. |
| Aug. 11 " | Received 07-23-04. Letter from Charles A. Lane, Esq. withdrawing as counsel. Correspondence states that Penny Littell, Esq. will, however, remain as counsel filed. |
| Sep. 10 | Received 09-10-04: Plaintiffs' Motion Requesting Court to Issue Orders Specifying the Future Course of Proceedings and Establishing Dates for Filings of Brief filed. |
| Oct. 7 | Received 10-7-04. Plaintiffs, Maine Stream Seafood, Inc. and Clinton Joseph Ray's, Rule 80B brief with exhibits 1-5 filed. |
| Nov. 2 | Received 10-28-04: Appellee, Portland Fish Exchange's Motion to Strike filed. Appellee, Portland Fish Exchanges' Reply Brief with attachments, Exhibits A thru H and 1 thru 5 filed. |
| " " | |
| Nov. 9, | Received 11-9-04: Plaintiff, Maine Stream Seafood, Inc. and Clinton Joseph Ray's response to defendant's reply brief. |
| Nov. 9 | Received 11-9-04. Order Specifying Future Course of Proceedings filed. (Humphrey, J.) It is ordered that the plaintiff's may file a reply brief on or before 11-15-04. 11-10-04 copy mailed to Penny Littell and David Perkins, Esqs. |
| 2005 Jan. 21, | Received 1-21-05 Entry of Appearance as co-counsel for plaintiffs Maine Stream and Joseph Ray filed by Atty May. |
| Apr. 19 | Received 4-19-05. Letter from David J. Perkins Esq. regarding rescheduling hearing filed. |
| June 29 | On 06-28-05: Hearing held on 80B Appeal. Court takes matter under advisement. Presiding, Justice Delahanty. No Record Made. |
| Mar. 9 | Received 03-09-06: Letter from David J. Perkins, Esq. stating this case was scheduled for June 28, 2005 and they argued the case on that date. He wanted to ask the clerk's office to check to make sure that the file was still in front of Justice Delahanty filed. |

| Date of Entry | |
|---|---|
| | Docket No. AP-04-16 |
| 2006 May 24 | Received 05-23-06: Decision and Judgment filed. (Delahanty, J.). The Clerk will make the following entry as the Decision and Judgment of the Court: The decison of the Board of the Portland Fish Exchange is Affirmed. SO ORDERED. On 05-24-06 Copies mailed to David Perkins, Gerald May and Penny Littell, Esqs. |
| 2006 May 24 | Received 05-23-06: Decision and Judgment filed. (Delahanty, J.). The Clerk will make the following entry as the Decision and Judgment of the Court: The decison of the Board of the Portland Fish Exchange is Affirmed. SO ORDERED. On 05-24-06 Copies mailed to David Perkins, Gerald May and Penny Littell, Esqs. |