MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 72
Docket:      Yor-19-331
Argued:      March 3, 2020
Decided:     May 19, 2020
Revised:     March 4, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.*
Majority:    GORMAN, HUMPHREY, HORTON, and CONNORS, JJ.
Dissent:     MEAD and JABAR, JJ.

DANIEL G. RAPOSA JR. et al.

v.

TOWN OF YORK et al.

HORTON, J.

[¶1]  Daniel G. Raposa Jr. and Susan Raposa appeal from a judgment of

the Superior Court (York County, *O'Neil, J.*) pursuant to M.R. Civ. P. 80B,

affirming a decision of the Town of York Board of Appeals.  The Board's decision

purported to grant the Raposas' appeal from a decision of the Town's Code

Enforcement Officer (CEO).  However, the Board's written findings of fact

directly contradict and effectively nullify its decision to grant the appeal.  We

conclude that the matter must be remanded for further proceedings.

---

*  Although Chief Justice Saufley participated in this appeal, she resigned before this opinion was
certified.

## I. BACKGROUND

[¶2]  The following facts are supported by evidence in the record.  *See Grant v. Town of Belgrade*, 2019 ME 160, ¶ 2, 221 A.3d 112; *see also Raposa v. Town of York*, 2019 ME 29, ¶¶ 2-4, 204 A.3d 129 (describing the factual and procedural background of this case).  The Raposas own residential property in the Town of York that abuts property owned by Joshua Gammon, on which Gammon operates a commercial landscaping business.  Gammon's lot was created by his predecessor-in-title's division of a larger lot.  Gammon's predecessor previously operated an excavation business on Gammon's property, a lawful nonconforming use pursuant to the Town's Zoning Ordinance.  *See* York, Me., Zoning Ordinance, art 17.1 (Nov. 5, 2019).  In 2016, the Raposas contacted the Town's CEO "to express their concern that Gammon's use of the property was not consistent with [his predecessor's] nonconforming use."  *Raposa*, 2019 ME 29, ¶ 3, 204 A.3d 129.  In response to this inquiry, the CEO determined that (1) she did not have jurisdiction to decide whether the creation of Gammon's lot violated the Town's Shoreland Overlay District Ordinance, York, Me., Zoning Ordinance, art. 8 (Nov. 5, 2019); (2) the prior nonconforming use of the property by Gammon's predecessor had not been discontinued following the creation of Gammon's property; and

(3) Gammon's current nonconforming use of his property did not represent a change in use from the prior use.[1]

[¶3]  The Raposas appealed the CEO's decision to the Board.  At the Board's first public meeting on the matter, the Raposas asserted that all three of the CEO's determinations were in error.  As particularly relevant to this appeal, the Raposas contended that Gammon's operation of his business on his property was a change in use from his predecessor's use of the property, and not, as the CEO had determined, an intensification of the same use.[2]

[¶4]  On July 27, 2016, the Board held another public hearing on the matter.  At this hearing, the Board granted, by a 3-2 vote, the Raposas' appeal as to both the lot-creation and change-of-use issues.  However, the transcript from the hearing reflects considerable uncertainty leading up to this vote.[3]

---

[1]  The CEO's latter two conclusions allowed Gammon to continue operating his landscaping business on his property.  *See* York, Me., Zoning Ordinance, arts. 17.1.1, 17.1.2, 17.1.4 (Nov. 5, 2019).  Throughout this opinion, we refer to these two issues collectively as the "change of use" issue and the Raposas' other argument as the "lot creation" issue.

[2]  The distinction between a change in use and an intensification of a prior use is significant because "a mere increase in the intensity or volume of business is not an unlawful expansion of a preexisting, nonconforming use, which is protected from an uncompensated public taking.  In contrast[,] a new use or a use of a different character can be proscribed by a zoning ordinance." *Boivin v. Town of Sanford*, 588 A.2d 1197, 1199 (Me. 1991); *see* York, Me., Zoning Ordinance, arts. 17.1.1, 17.1.4.

[3]  The Board voted on three motions at the July 27 hearing.  First, the Board declined, by a vote of 2-3, to adopt a motion regarding the lot-creation issue: that the CEO "incorrectly determined [Gammon's property] to be a legally non-conforming grandfathered lot."  Shortly thereafter, the Board voted 2-3 against a motion regarding the change-of-use issue: that "the CEO correctly

4

[¶5]   On August 24, 2016, the Board met to vote on the language of its written decision concerning the Raposas' appeal.  *See* 30-A M.R.S. § 2691(3)(E) (2020) ("All decisions . . . must include a statement of findings and conclusions, as well as the reasons or basis for the findings and conclusions . . . .").  The written decision references the July 27 vote and indicates that the Raposas' appeal was granted.  The decision includes the following findings of fact:

---

determined that [Gammon's] property is a legally non-conforming use that is permitted to continue on the property."

Following the Board's vote on the second motion, the Chairman expressed his belief that the Board was having trouble resolving the Raposas' appeal because the two prior motions did not make clear whether approving them would result in granting the Raposas' appeal.  He suggested that the Board vote on "a motion that disposes with the appeal in favor or opposed with it, either grants [the appeal] or doesn't."  The following exchange then occurred:

> MR. MOULTON: I think you need to specify [in a motion] that you're either approving the appeal of Daniel and Susan Raposa or you're not.
>
> . . . .
>
> MR. MOULTON: . . . I would move that the appeal of Daniel and Susan Raposa be approved.
>
> MR. MOTOLLA: I second.
>
> . . . .
>
> MR. MOULTON: They appealed two things, the lot line adjustment and they appealed the use.  *If you don't agree with both of those things, don't vote for it.*
>
> CHAIRMAN LASCELLES: Okay.  So[,] we've had a motion . . . to grant the administrative appeal.

(Emphasis added.)  The moving board member thus clarified that other members should vote in favor of the motion only if they intended to grant the Raposas' appeal as to both issues.  Thereafter, the Board voted to grant the motion.

11) The use of the lot by Mr. Gammon's landscaping business does not constitute a change of use but is an intensification of the same use.

12) The legally non-conforming use ha[s] not been shown to be interrupted during [Gammon's predecessor's] ownership.

[¶6]  Prior to the August 24 meeting, the Raposas' attorney expressed her concern to the Chairman of the Board that these findings were inconsistent with the Board's July 27 vote to grant the Raposas' appeal on the change-of-use issue.  Ultimately, however, the Board accepted the written decision, including the two findings listed above.

[¶7]  The Raposas and Gammon each appealed to the Superior Court pursuant to M.R. Civ. P. 80B.  The Raposas contended, among other things, that the Board could not grant their appeal as to the change-of-use issue and simultaneously adopt findings that contradict that decision.  Gammon appealed the Board's decision to grant the Raposa's appeal as to the lot-creation issue.  Gammon's appeal was resolved in his favor, and the lot-creation issue is no longer in contention.  Gammon joined the Town in opposing the Raposas' appeal.

[¶8]  The Superior Court granted the Town's motion to dismiss the Raposas' appeal for lack of subject matter jurisdiction.  The Raposas appealed that decision to us, and we vacated the judgment and remanded for the court to

reach the merits of the Raposas' Rule 80B appeal. *See Raposa*, 2019 ME 29, ¶ 13, 204 A.3d 129. On remand, the court affirmed the Board's decision, concluding that (1) the Board's written decision issued on August 24 was the operative decision for judicial review and (2) the findings contained in that decision were supported by substantial evidence in the record. The Raposas timely appealed. *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶9] "Because the Board conducted a de novo review of the CEO's determination, we review the Board's decision directly." *Raposa*, 2019 ME 29, ¶ 12, 204 A.3d 129. We review the Board's decision "for errors of law, abuses of discretion, or findings not supported by substantial evidence in the administrative record." *Bryant v. Town of Wiscasset*, 2017 ME 234, ¶ 11, 176 A.3d 176. As the parties seeking to vacate the Board's decision, the Raposas bear the burden of persuasion. *See id.*

[¶10] In both its July 27 vote and its August 24 written decision, the Board purported to grant the Raposas' appeal in its entirety, without differentiating between the lot-creation and the change-of-use issues. The Board was required to justify that result with written findings that

support—not contradict—its decision. *See* 30-A M.R.S. § 2691(3)(E); *Carroll v. Town of Rockport*, 2003 ME 135, ¶ 27, 837 A.2d 148.

[¶11] However, the Board's findings that are pertinent to the change-of-use issue support a denial, rather than a grant, of the Raposas' appeal on that issue. Because the Board's August 24 decision purports to grant the Raposas' appeal on the change-of-use issue but contains factual findings that directly contradict that result, we vacate the decision and remand for further proceedings.[4]

[¶12] On remand, the Board must (1) decide, based on the evidence in the record, whether to grant or deny the Raposas' appeal on the change-of-use issue and (2) issue findings that support the Board's decision, *see* 30-A M.R.S. § 2691(3)(E).

The entry is:

> Judgment vacated. Remanded to the Superior
> Court with instructions to remand to the Town

---

[4] Assuming the dissent's operative decision analysis applies where, as here, a Rule 80B appeal involves the actions of a single board, we conclude that this appeal cannot be resolved by determining whether the July 27 vote or the August 24 decision was the Board's operative decision for review. The dissent adopts the view that "the August 24 written findings narrowed the basis for granting the Raposas' appeal to the lot-creation issue and found in favor of Gammon on the change-of-use issue." Dissenting Opinion ¶ 19. That may have been the Board's intent in adopting the findings, but the written decision in which the findings appear says, consistent with the July 27 vote, that the appeal is granted in its entirety, without differentiating between the two issues. If we were to affirm the Board's decision, we would be affirming the grant of the Raposas' appeal on the change-of-use issue, even though, as the dissent points out, the Board may have meant to deny the appeal on that issue. *See* Dissenting Opinion ¶¶ 13, 18-19, 27.

of York Board of Appeals for further proceedings consistent with this opinion.

---

MEAD, J., with whom JABAR, J., joins, dissenting.

[¶13] In its meeting on August 24, 2016, the Town of York Board of Appeals debated and very purposely adopted written findings of fact determining that there had been no change in Joshua Gammon's use of his lot and that Gammon's grandfathered nonconforming use had not been interrupted while his predecessor owned the lot. Although the Board had earlier conflated those issues with a separate issue concerning the creation of Gammon's lot when it voted to grant the Raposas' appeal, the Board's later written findings clarified and conclusively resolved its decision concerning the discrete change-of-use issue. I would hold that the written findings are the operative decision of the Board for our review and that they are supported by substantial evidence in the record. Accordingly, I respectfully dissent.

[¶14] Gammon operates a commercial landscaping business on his property, which, in response to an inquiry by the Raposas, the Code Enforcement Officer (CEO) found, pursuant to the Town's Zoning Ordinance, to be a grandfathered nonconforming use occurring on a "legally non-conforming grandfather[ed] lot exempt from Code Enforcement jurisdiction." *See* York, Me.,

Zoning Ordinance art. 17.1.1 (Nov. 5, 2019) ("A non-conforming use which is otherwise lawful according to all applicable regulations may continue . . . .").

[¶15] The Raposas appealed the CEO's decision to the Board, which held four public meetings:

- June 8, 2016: The Raposas presented two primary but very separate concerns to the Board: (1) that Gammon's lot, created by his predecessor-in-title's division of a larger lot, did not meet the requirements of the Town's Shoreland Overlay District Ordinance; and (2) that the operation of Gammon's business represented a change in use from his predecessor's nonconforming use.[5] The Board continued the matter so that the CEO could appear.

- June 22, 2016: At a public hearing, the Board heard from a number of speakers, including the Raposas and the CEO, concerning the two issues. As to the lot-creation issue, which was the Board's primary concern, it decided to continue the matter in order to obtain an opinion from the Town's attorney. Concerning Gammon's use of the lot, most of the Board members viewed the issue as one of an intensification of the previous use rather than a change of use.

- July 27, 2016: The Board discussed the Town attorney's opinion that the creation of Gammon's lot by his predecessor-in-title required Planning Board approval; counsel did not opine on the change-of-use issue.

  The Board then considered and voted on three motions. The first, which would have found that the CEO erred in her decision on the lot-creation issue, was defeated, as was the second, which would have found that the CEO was correct in her decision on the change-of-use issue.

---

[5] The Court refers to these separate and distinct issues as the "lot creation" issue and the "change of use" issue. Court's Opinion ¶ 2 n.1.

Following the failure of the first two motions, the Chair expressed the view that "we do need to decide the appeal, I think up or down . . . I would look to see a motion that disposes with the appeal in favor or [is] opposed [to] it, either grant[s] it or doesn't." A motion to grant the appeal carried by a 3-2 vote.

In voting to grant the appeal as a whole, the Board did not separately consider an alternative that had been suggested by its earlier discussion of the first motion: granting the appeal on the lot-creation issue and not on the change-of-use issue:

> MR. MOULTON:  Does [voting for the motion concerning the lot-creation issue] grant the Raposas' appeal?
>
> MR. SWANT:  [T]hat was part of the question that I posed earlier, does it grant their appeal?
>
> MR. MANOUGIAN:  I think it does.  No matter what you do, they're gonna wind up in the planning board no matter what we decide, but I think it does.
>
> . . . .
>
> MR. SWANT: . . . That's where it's gonna go anyhow [to the Planning Board]. . . . [W]e can say that the planning board needs to come to a decision on the matter.

- August 24, 2016:  The Board clarified the basis for its July 27 vote to grant the appeal when it met to finalize its written findings of fact. Before the meeting, the Raposas' attorney expressed her concern to the Chair that proposed draft findings concerning the change-of-use issue did not reflect the July 27 votes taken by the Board.  Alerted to the Raposas' concerns, the Board nonetheless discussed the draft findings at length, and, relevant to this appeal,

  - concerning a proposed finding that "[t]he use of the lot by Mr. Gammon's landscaping business does not constitute a change of use but is an intensification of the same use," the Board *rejected*

a motion to delete that finding and passed a separate motion *explicitly retaining* it;

- the Board *rejected* a motion to delete a proposed finding that "[t]he legally non-conforming use had not been shown to be interrupted during [Gammon's predecessor's] ownership"; and

- separately addressing the lot-creation issue, the Board found that "[t]he lot in question is not a legally created lot of record since Planning Board approval . . . is required."

The Board concluded the meeting by accepting the written findings on a 3-1 vote of the members present, including the findings resolving the change-of-use issue in Gammon's favor.

[¶16] On August 29, 2016, the Chair signed a document entitled "Official Record of the Town of York Board of Appeals," reflecting both the July 27 vote taken on the motion to approve the Raposas' appeal and the Board's written findings of fact, adopted after that vote had been taken, which narrowed the basis for the grant of the Raposas' appeal.

A.    Operative Decision of the Board

[¶17]   "Because the Board conducted a de novo review of the CEO's determination, we review the Board's decision directly," *Raposa v. Town of York*, 2019 ME 29, ¶ 12, 204 A.3d 129, but before proceeding we must first determine which of the Board's decisions to review, *see Fitanides v. City of Saco*, 2015 ME 32, ¶ 8, 113 A.3d 1088 (stating that we review "the *operative* decision of the municipality" (emphasis added) (quotation marks omitted)).

12

[¶18]   I conclude that the Board's August 24 written findings are the operative decision of the Board for purposes of appellate review.   The Ordinance governing the Board provides:

> The Board of Appeals shall render a decision on an application not later than 30 days from the date of the final [h]earing.  The *final decision* on any matter before the Board shall be made by *written order* signed by the Chair . . . ."

Zoning Ordinance art. 18.8.3.4 (emphasis added); *see* 30-A M.R.S. § 2691(3)(E) (2020) (stating that a municipal board of appeals decision "must include a statement of findings and conclusions, as well as the reasons or basis for the findings and conclusions, upon all the material issues of fact, law or discretion presented").   The Board's bylaws restate the requirement for a written decision: "The final decision on any matter before the Board shall be made by *written order* signed by the Chairman . . . ."  York, Me., Appeals Board Bylaws § X(B) (May 26, 2004) (emphasis added).[6]

[¶19]   Here, the "Official Record of the Town of York Board of Appeals," although referencing the initial July 27 vote, was signed by the Chair after the Board had approved its August 24 written findings, which are explicitly incorporated in the "Official Record."   In my view, the August 24 written

---

[6]  Available at https://www.yorkmaine.org/DocumentCenter/View/569/Appeals-Board-Bylaws-PDF.

findings narrowed the basis for granting the Raposas' appeal to the lot-creation issue and found in favor of Gammon on the change-of-use issue. As the Court notes, the lot-creation issue is no longer contested. Court's Opinion ¶ 7.

B.     Substantial Evidence

[¶20]  We review the Board's written findings deferentially

> for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. [The Raposas have] the burden of showing that the evidence compels a contrary conclusion. A board of appeals has discretion in determining whether an activity is within the scope of a permitted, nonconforming use. We may not substitute our judgment for that of the Board. If there is relevant evidence in the record to reasonably support the Board's conclusion, the fact that the record contains inconsistent evidence or [that] inconsistent conclusions could be drawn from the evidence does not invalidate the Board's holding.

*Boivin v. Sanford*, 588 A.2d 1197, 1199 (Me. 1991) (alteration and quotation marks omitted); *see Grant v. Town of Belgrade*, 2019 ME 160, ¶ 8, 221 A.3d 112; *MSR Recycling, LLC v. Weeks & Hutchins, LLC*, 2019 ME 125, ¶ 13, 214 A.3d 1 ("A demonstration that no competent evidence supports the Board's findings is required in order to vacate the Board's decision." (alterations and quotation marks omitted)).

[¶21]  Given this record, the Board, faced with the task of resolving conflicting testimony, made a decision supported by substantial evidence that did not compel a contrary finding. *See Boivin*, 588 A.2d at 1199. "Substantial

14

evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion. That inconsistent conclusions can be drawn from evidence does not mean that a finding is not supported by substantial evidence." *Toomey v. Town of Frye Island*, 2008 ME 44, ¶ 12, 943 A.2d 563 (quotation marks omitted).

### 1. Change of Use

[¶22] In the first finding challenged by the Raposas, the Board determined that "[t]he use of the lot by Mr. Gammon's landscaping business does not constitute a change of use but is an intensification of the same use." At the June 22 public hearing, the Board heard from several witnesses who said that Gammon's use of his property was different in both kind and intensity from that of his predecessor. The Board also heard from one witness who said that it was not, and received documentary evidence suggesting that Gammon's use was similar to the previous use. At the July 27 hearing, the CEO told the Board, "I didn't see that there has been a change of use." Although it could have done otherwise, the Board was entitled to credit the evidence in favor of a conclusion that Gammon's business did not constitute a change of use. *See id.*

2. Discontinuation of Prior Nonconforming Use

[¶23]  The Raposas also challenge the Board's finding that "[t]he legally non-conforming use had not been shown to be interrupted during [Gammon's predecessor's] ownership."  The York Zoning Ordinance provides that: "A lot . . . on which a non-conforming use is discontinued for a period exceeding 24 months . . . may not again be devoted to a non-conforming use . . . ."  Zoning Ordinance art. 17.1.2.  Here, the Board had before it a letter from the Town to Gammon's predecessor indicating that the Town had foreclosed on the property before 2011 and a quitclaim deed indicating that Gammon's predecessor had redeemed the property more than twenty-four months later by satisfying outstanding tax liens in 2014, the same year that Gammon acquired his property.

[¶24]  However, as the Superior Court noted, the Raposas failed to establish that the Town had ever taken actual possession of the property, or that Gammon's predecessor had discontinued his nonconforming use during the period when the property was in foreclosure.  The CEO stated at the July 27 hearing that "whether [Gammon's predecessor] owned [the lot] or the [T]own owned it, *the use continued.  I don't see that it stopped, I don't see that it changed*."  (Emphasis added.)  Furthermore, the record before the Board contained

receipts from which the Board could infer that Gammon's predecessor continued to conduct business between 2011 and 2014.

[¶25] One Board member, noting that the evidence was not definitive, speculated that "[Gammon's predecessor] could have been using the property to . . . make money to pay for the taxes. Who knows." Our jurisprudence assigns to the Raposas the burden to show that the nonconforming use was discontinued for the requisite period. *See Fitanides*, 2015 ME 32, ¶ 8, 113 A.3d 1088; *Boivin*, 588 A.2d at 1199. The Board was entitled to accept the evidence that it found to be credible and persuasive, and it could reasonably conclude from the conflicting evidence that Gammon's predecessor did not discontinue his nonconforming use for a period exceeding two years. *See Toomey*, 2008 ME 44, ¶ 12, 943 A.2d 563; *Boivin*, 588 A.2d at 1199. Accordingly, the Ordinance did not prohibit Gammon's ongoing nonconforming use. *See* Zoning Ordinance art. 17.1.2.

C. Conclusion

[¶26] I would conclude that the Board's August 24 written findings are the operative decision for our review, and that those findings were intended to, and did, narrow the basis for granting the Raposas' appeal to the lot-creation issue. I would further determine that the Board's written findings concerning

the change-of-use issue, reviewed deferentially, are supported by substantial evidence.

[¶27]  It is enough that the basis for the Board's decision can be ascertained from the record, whether or not the Board's mandate is framed in the polished niceties of a judicial opinion.  Here, the basis for the Board's decision to grant the Raposas' appeal was its determination that the lot-creation issue required Planning Board review.  Concerning the use issue, the Board clearly and purposely found, following discussion and separate votes, that there had been no change or discontinuation of the prior nonconforming use.  Those findings were grounded in the Board's determinations of witness credibility and the weight to be given to the evidence before the Board—determinations that we purport to review with considerable deference.

[¶28]  There is no reason to further delay the resolution of this matter, which has now been pending for well over three years.  Accordingly, I would affirm the judgment of the Superior Court denying the Raposas' M.R. Civ. P. 80B appeal, and I respectfully dissent from the Court's decision to vacate that judgment.

Sandra L. Guay, Esq. (orally), Woodman, Edmands, Danylik & Austin, P.A., Biddeford, for appellants Daniel Raposa Jr. and Susan Raposa

Mary E. Costigan, Esq. (orally), and Letson B. Douglass, Esq., Bernstein Shur, Portland, for appellee Town of York

Matthew W. Howell, Esq. (orally), Clark & Howell, LLC, York, for appellee Joshua Gammon

York County Superior Court docket numbers AP-2016-34 & AP-2016-35
FOR CLERK REFERENCE ONLY