2005 ME 65

**Thomas LEAKE et al.**

v.

**TOWN OF KITTERY et al.**

Supreme Judicial Court of Maine.

Argued: May 18, 2005.
Decided: June 8, 2005.

Paul W. Cadigan (orally), Kennebunk, for plaintiffs.

W. Scott O'Connell (orally), Courtney Worcester, Nixon Peabody, L.L.P., Manchester, NH, for Ronald & Jean Spinney.

Duncan A. McEachern (orally), McEachern & Thornhill, Kittery, for Town of Kittery.

Panel: SAUFLEY, C.J., and
CLIFFORD, RUDMAN, DANA,
ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] The Town of Kittery and the owners of the Chauncey Creek Lobster Pier, Ronald and Jean Spinney, appeal from the judgment of the Superior Court (York County, *Brennan, J.*) vacating the decision of the Kittery Zoning Board of Appeals (ZBA), which affirmed the decision of the Kittery Code Enforcement Officer (CEO) who found that the addition in 1984 of thirteen picnic tables at the Spinneys' restaurant was not a violation of the Town's 1977 zoning ordinance. Because the evidence clearly supports the ZBA's findings, we vacate the judgment.

## I. BACKGROUND

[¶ 2] The Chauncey Creek Lobster Pier has operated as a restaurant in Kittery since the 1950s. The majority of its patrons dined outside on the pier at twenty-three picnic tables overlooking the water.[1] In 1977, the restaurant was rendered a nonconforming use by the enactment of the Kittery Land Use and Development Code Zoning Ordinance. In 1984, Ronald and Jean Spinney purchased the restaurant, and added thirteen picnic tables to the already existing twenty-nine tables for a total of forty-two tables. The Spinneys purchased an adjoining property to expand their parking facilities at the restaurant,

and requested a variance from the ZBA. In 1984, the ZBA granted the variance with a provision that the seating capacity remain at its present number.

[¶ 3] The restaurant proceeded to serve its customers for the next seventeen years without any complaint to the Town regarding its seating capacity. In 2000, however, Jonel Leake, a neighbor of the restaurant, made her first of three complaints to the CEO.[2] On June 13, 2001, Leake complained to the CEO that the restaurant was in violation of its parking variance because the restaurant had increased its seating, and was causing traffic congestion in the neighborhood. Relying on real estate tax assessment records, the CEO found that the restaurant was in violation of the conditions contained within the restaurant's parking variance obtained in 1984.

[¶ 4] The Spinneys appealed from the decision of the CEO to the ZBA, and on September 11, 2001, the ZBA vacated the CEO's determination in a unanimous vote. The ZBA found that the real estate tax assessment records were unreliable, and that there had been no expansion in the number of tables since 1984. The ZBA found that there were currently forty-two tables at the restaurant, and that the number of tables should remain the same. The ZBA declined to rule on the effect of the 1977 ordinance on the addition of thirteen picnic tables, but noted that the asserted violation of the 1977 ordinance could be raised at a future hearing. Leake did not appeal from the ZBA's decision of September 11, 2001.

[¶ 5] On the evening of September 11, 2001, Leake complained to the CEO that the Spinneys had added tables between 1977 and 1984 in violation of the 1977

---

1. There were six additional tables inside the restaurant.

2. The CEO took no action on Leake's first complaint.

ordinance. The CEO responded that he did not find a violation and took no action on Leake's complaint. Leake appealed to the ZBA. After a hearing on December 11, 2001, the ZBA voted to dismiss the appeal for lack of jurisdiction because no appeal had been taken in 1984 when the Spinneys were granted a variance. Most notably, the ZBA found that it had given its approval in 1984 to expand the restaurant's seating to its present capacity. Leake appealed to the Superior Court pursuant to M.R. Civ. P. 80B.

[¶ 6] On January 6, 2002, the Superior Court remanded the case back to the ZBA for an evidentiary hearing regarding the expanded seating capacity between 1977 and 1984. After remand, the ZBA conducted an expansive review of the 1977 ordinance and the seating at the restaurant. The ZBA upheld the CEO's decision that the addition of thirteen picnic tables in 1984 did not violate the 1977 ordinance. Leake again appealed from the ZBA's decision to the Superior Court. The court "granted" Leake's appeal.[3]

## II. DISCUSSION

[¶ 7] Because the Superior Court acted within its appellate capacity, we re-view the ZBA's decision directly "for errors of law, an abuse of discretion, or findings not supported by the record." *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 6, 868 A.2d 230, 232. "The meaning of terms or expressions in a zoning ordinance is a question of law for the court." *Two Lights Lobster Shack v. Town of Cape Elizabeth*, 1998 ME 153, ¶ 5, 712 A.2d 1061, 1063. As the party seeking to overturn the ZBA's decision, Leake "has the burden of establishing that the evidence compels a contrary conclusion." *Herrick v. Town of Mechanic Falls*, 673 A.2d 1348, 1349 (Me.1996). "A zoning board of appeals has discretion in determining whether an activity is within the scope of a permitted, nonconforming use." *Id.* "In reviewing the ZBA's decision, [a court] may not make any findings other than those found explicitly or implicitly by the ZBA, and may not substitute [its] own judgment for the ZBA." *Tarason*, 2005 ME 30, ¶ 6, 868 A.2d at 232.

[¶ 8] With regard to nonconforming uses, the 1977 ordinance required ZBA approval (1) to change an existing nonconforming use to another nonconforming use, and (2) whenever there was a change in the exterior character of a nonconforming use.[4] The ZBA, after the December 11,

---

3. We again note that a judgment that merely grants an appeal is insufficient, particularly when a complaint requests multiple avenues of relief. When a matter is before a court in an *appellate* posture, the court may affirm the decision below in whole or in part, vacate in whole or in part, or dismiss.

4. The 1977 nonconforming use ordinance states, in relevant part:

1) Any lawful use of buildings, structures, premises, land or parts thereof existing at the effective date of this Code and made nonconforming by the provisions of this Chapter or any amendments thereto may be continued subject to the provisions of this section.

. . . .

3) An existing nonconforming use may be changed to another nonconforming use provided that the Board of Appeals shall find that the proposed use is equally or more appropriate to the zoning district than the existing nonconforming use.

. . . .

5) Whenever any change in exterior character of any nonconforming use is proposed, including enlargement, except for normal maintenance related operations, the Board of Appeals shall review all application and may grant permission for such proposed changes.

Kittery, Me., Land Use and Development Code Zoning Ordinance ch. 1 § II (June 13, 1977).

2001 hearing, found that the 1984 ZBA decision approved the addition of thirteen picnic tables in 1984 when it reviewed the Spinneys' variance application for additional parking.[5] The ZBA stated in its findings of fact on December 11, 2001, that "the Zoning Board of Appeals in 1984 ... found the present facility, including seating, would not be expanded, and that the seating at that time was set at 43 tables by the Chief of Police. Therefore, the Zoning Board had approved an expansion up to 43 tables ...." This fact is supported by the testimony of the chief of police whose responsibility, in 1984, was to count the number of tables and the number of parking spots and report those numbers back to the ZBA. In 1984, the chief of police notified the ZBA that there were forty-three tables at the restaurant.[6] This fact is also supported by the 1984 decision of the ZBA to grant the parking variance with instructions that the seating at the restaurant remains the same.

[¶ 9] We need not decide whether the addition of thirteen tables was in itself a violation of the 1977 ordinance because the ZBA gave approval for the additional picnic tables. The record supports the ZBA's findings of fact that the seating expansion had been approved in 1984, and the evidence does not compel a contrary conclusion.

The entry is:

Judgment vacated. Remanded to the Superior Court for it to enter a judgment affirming the decision of the Kittery Zoning Board of Appeals.

5.  The Superior Court in its January 2002 order remanded the case back to the ZBA for it to decide the seating between 1977 and 1984. However, this action was unnecessary as the ZBA found on December 11, 2001, that the 1984 ZBA had given its approval for the additional thirteen tables.

6.  The chief of police testified at the ZBA hearing on September 11, 2001, that:

    Back in 1984 I was asked by the current town manager ... to review a plan for an expansion of parking at the Chauncey Creek ....

My understanding was that I was to go down and make a count of the tables and a count of the available parking spaces ... and report back to [the ZBA] the number of tables and [report] the number of available parking spaces to support those tables.

At the time I made my inspection there were 43 tables, the number that I counted, not 42. But I believe one was used for employees.... I reported back to the town the number of tables and I reported back the number of available parking spaces to support that number of tables in 1984.