STATE OF MAINE                                           SUPERIOR COURT
LINCOLN, ss.                                             CIVIL ACTION
                                                         DOCKET NO. AP-16-06

WILLARD PIERPONT,                     )
                                      )
        Plaintiff                     )
                                      )
v.                                    )                  ORDER ON
                                      )                  80B PETITION
TOWN OF SOMERVILLE,                   )
                                      )
        Defendant                     )

Plaintiff Willard Pierpont appeals pursuant to Maine Rule of Civil Procedure 80B from a

decision by the Town of Somerville Board of Appeals. The Court elects to decide the appeal

without oral argument. See M.R. Civ. P. 80B(l) (oral argument to be scheduled "[u]nless the

court otherwise directs").

## I.    BACKGROUND

Plaintiff is the owner of a parcel of land in the Town of Somerville, Maine (the "Town").

(R. 8:1.) The Town adopted a Land Use Ordinance ("LUO") in 2012. (R. 8:3.)

At the time the Town adopted the LUO, Plaintiff was engaged in "gravel extraction,

gravel processing (power screening) and hauling gravel" on his land. (R. 8:3.) The parties agree

that these activities were "grandfathered" as a lawful nonconforming use of Plaintiff's land.[1]

(Pl.'s Br. 2, 5; Def.'s Br. 1, 2; R. 8:1, 4.)

On August 7, 2016, the Town's Code Enforcement Officer ("CEO") issued Plaintiff a

Notice of Violation/Stop Work Order ("NOV") on the ground that Plaintiff had commenced rock

---

[1] Pursuant to Article V, Section 2(C) of the LUO, "[a]ny nonconforming use that is not permitted
in the district in which it is located is allowed to remain if it was in lawful existence at the time
[the LUO] or subsequent amendment took effect." (R. 1:5.)

crushing and blasting in violation of the LUO.[2] (R. 8:1.) Plaintiff timely appealed the NOV to the Town's Board of Appeals ("BOA") on the ground that his recent activities were within the scope of his nonconforming use. (R. 3, 8:1.) The CEO submitted a written response to Plaintiff's appeal. (R. 4, 8:2.)

The BOA held a public hearing on Plaintiff's appeal on October 6 and November 4, 2016. (R. 8:2-3; 10.) Plaintiff, the CEO, and the BOA were each represented by counsel. Plaintiff, the CEO, and members of the public spoke on October 6; Plaintiff and his witness, John Lavin P.E., spoke on November 4. (R. 8:2-3; 10.) On November 17, 2016, the BOA issued Findings of Fact and Conclusions of Law (the "Decision") denying Plaintiff's appeal and affirming the CEO's enforcement decision. (R. 8.) Plaintiff timely filed the pending appeal.

## II. STANDARD OF REVIEW

When reviewing the decision of a municipal agency pursuant to Maine Rule of Civil Procedure 80B, the Court reviews the decision "for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Wyman v. Town of Phippsburg*, 2009 ME 77, ¶ 8, 976 A.2d 985 (internal quotation marks and citation omitted). "Substantial evidence" is evidence that a reasonable mind would accept as sufficient to form a conclusion, even when the evidence would also support a contrary conclusion. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368. The party seeking to vacate the municipal agency's decision bears the burden of persuasion on appeal. *Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048.

The interpretation of local ordinances is a question of law that the Court reviews de novo. *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 1048. The Court examines ordinances for their

---

[2] The NOV also alleges certain statutory violations. (R. 2; 8.6.) All statutory claims were withdrawn according to the Decision of the BOA. (R. 8:6.)

2

plain meaning and construes the terms of the ordinances reasonably "in light of the purposes and objectives of the ordinance and its general structure." *Id.* ¶ 9. The Court must give the words in the ordinance their "plain and ordinary meaning" and must not construe the ordinance "to create absurd, inconsistent, unreasonable, or illogical results." *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 23, 82 A.3d 148 (internal quotation marks and citation omitted). If the meaning of an ordinance is clear on its face, the Court looks no further. *Rudolph*, 2010 ME 106, ¶ 9, 8 A.3d 684.

## III. ANALYSIS

Plaintiff does not deny that he partook in rock crushing and blasting on his land. Instead, Plaintiff argues that rock crushing and blasting fall within the scope of his lawful nonconforming use.

The BOA "has discretion in determining whether an activity is within the scope of a permitted, nonconforming use." *Leake v. Town of Kittery*, 2005 ME 65, ¶ 7, 874 A.2d 394 (quoting *Herrick v. Town of Mechanic Falls*, 673 A.2d 1348, 1349 (Me. 1996)). Although "[i]n general, a mere increase in the intensity or volume of business is not an unlawful expansion of a preexisting, nonconforming use," if a use is new or "of a different character" than the preexisting nonconforming use, it "can be proscribed by a zoning ordinance." *Boivin v. Sanford*, 588 A.2d 1197, 1199 (Me. 1991). "[A] questioned use may not be grandfathered if it fails to reflect the nature and purpose of the preexisting, nonconforming use, if it is different in quality or character as well as in degree, or if it is different in kind in its effect on the neighborhood where it is located." *Id.*

Based on Plaintiff's statements at hearing, the BOA concluded that since the 1990s, Plaintiff "has engaged in gravel extraction, gravel processing (power screening) and hauling gravel" on his land but that "he did not conduct blasting of rock or rock crushing on the Property

prior to the adoption of the LUO." (R. 8:3.) Applying the above-stated three part test, the BOA concluded that (1) rock crushing and blasting reflect the "nature and purpose" of Plaintiff's legal nonconforming use because both uses are "extractive"; (2) rock crushing and blasting are different in quality, character, and degree from Plaintiff's legal nonconforming use because "blasting and crushing are active processing methods that are different activities, which were not being conducted before the adoption of the LUO"; and (3) rock crushing and blasting are not different in kind from Plaintiff's legal nonconforming use in effect on the neighborhood because the BOA "received no evidence of such differences." (R. 8:5.) Because it found that rock crushing and blasting are different in quality, character, and degree from Plaintiff's preexisting lawful nonconforming use, the BOA concluded that those activities are not within the scope of the nonconforming use. (R. 8:5-6.)

Plaintiff argues that the BOA should not have applied the "*Boivin* test" because the scope of his lawful nonconforming use is as broad as the LUO's definitions of the terms used by the CEO and the BOA to classify that use, specifically, "mineral extraction," "mineral extraction activity," and "mineral processing."[3] (Pl.'s Br. 3-6.) According to Plaintiff, he is entitled to

---

[3] In the NOV, the CEO classified Plaintiff's nonconforming use as "mineral extraction," and classified Plaintiff's rock crushing and blasting activities as "mineral processing" and "quarry operation." (R. 2:1, 3.) Later, in his response to Plaintiff's appeal of the NOV, the CEO reclassified Plaintiff's nonconforming use as "gravel extraction," and specifically *not* "mineral extraction," and apparently classified Plaintiff's rock crushing and blasting activities as "industrial use" and "quarry operation." (R. 4:2.) In its Decision, the BOA classified Plaintiff's nonconforming use as "gravel extraction, gravel processing (power screening) and hauling gravel," identified Plaintiff as "the owner and operator of a mineral processing operation" on his land, and did not classify Plaintiff's rock crushing and blasting activities as anything other than simply rock crushing and blasting. (R. 8:3, 4.) Of these terms, Plaintiff limits his argument primarily to "mineral extraction," and the definitions for that phrase and "mineral extraction activity," although he also notes the BOA's use of the phrase "mineral processing operation" and the LUO definition of "mineral processing." Article XI, Section 2 of the LUO (Definitions) provides in relevant part:

4

partake in any activity that could possibly fall within these broad definitions simply because his preexisting activities also fall within those definitions. (*See* Pl.'s Br. 3-6.) This argument runs counter to Maine case law measuring a new or expanded nonconforming use not by semantics but by nature, purpose, quality, character, degree, and effect. *See, e.g., Turbat Creek Pres., LLC v. Town of Kennebunkport*, 2000 ME 109, ¶ 13, 753 A.2d 489; *Boivin* 588 A.2d at 1199; *Keith v. Saco River Corridor Comm'n*, 464 A.2d 150, 155 (Me. 1983); *Frost v. Lucey*, 231 A.2d 441, 448 (Me. 1967). It also runs counter to the purpose of the LUO's stated purposes to "encourage the most appropriate use of the land" and to regulate nonconforming uses "such that they can be reasonably developed, maintained, or repaired, or changed to other less nonconforming or to conforming uses." (R. 1:1, 5.) *See also Lewis v. Town of Rockport*, 1998 ME 144, ¶ 12, 712 A.2d 1047 (quoting *Gagne v. City of Lewiston*, 281 A.2d 579, 581 (Me. 1971) ("[T]he spirit of the zoning ordinances and regulations is to restrict rather than to increase any nonconforming uses, and . . . provisions of a zoning regulation for the continuation of such uses should be strictly construed") (ellipses in original)).

Plaintiff also argues that that BOA erred when it found that rock crushing and blasting differ in quality and character from gravel extraction, screening, and hauling. (Pl.'s Br. 3-6.) As

---

MINERAL EXTRACTION: Any extraction of mineral deposits, including gravel, other than mineral exploration to determine the location, extent, and composition or [sic] deposits.

MINERAL EXTRACTION ACTIVITY: any excavation or removal, handling or storage of on-site extracted sand, gravel, borrow, rock, clay, minerals, or topsoil to include, but is not limited to, sand or gravel pits, clay pits, borrow pits, quarries, mines, and topsoil mining or removal.

[. . . .]

MINERAL PROCESSING: The processes and related mechanical equipment to wash, crush, or otherwise process rock or earth materials, including the mixing of concrete or asphalt or other aggregate processes. This does not include the loading of material into trucks for transport to off-site processing or the screening of material.

(R. 1:33.)

5

previously stated, the BOA has discretion in determining whether an activity is within the scope of a preexisting nonconforming use. *Leake* 2005 ME 65, ¶ 7, 874 A.2d 394. The Court may not substitute its judgment for that of the BOA. *Boivin*, 588 A.2d at 1199. If there is relevant record evidence reasonably supporting the BOA's Decision, "the fact that the record contains inconsistent evidence or inconsistent conclusions could be drawn from the evidence does not invalidate the [BOA's] holding." *Id.* Plaintiff explained to the BOA at hearing that at the time the LUO was adopted in 2012, his gravel extraction activities consisted of excavating sand and gravel, loading it into a "power screen" and processing it. (R. 10:52-53.) As the BOA discussed in its deliberations, these activities generally do not consist of breaking down larger rocks into smaller material via crushing or blasting. (R. 128-129.) The BOA therefore had sufficient evidence to conclude that rock crushing and blasting are "active processing methods" that differ in quality and character from excavating and screening. (R. 8:5.)

## IV.    CONCLUSION

In light of the foregoing, the decision by the Town of Somerville Board of Appeals is AFFIRMED.

Date:    June 13, 2017

Daniel I. Billings
Justice, Maine Superior Court

6

Date Filed:  12/20/2016                              Docket No. AP-16- 6
                                                     Lincoln  County
Action:  80B


Willard Pierpont                                     Town of Somerville
479 Jefferson Rd.                vs.                 72 Sand Hill Road
Washington, ME  04574                                Somerville, ME 04348

Attorney:

Edmond J. Bearor, Esq.                               Mary A. Denison, Esq.
Katie Foster                                         PO Box 67
Rudman Winchell                                      Winthrop, ME  04364
PO Box 1401
Bangor, ME  04402



Date of Entry:  12/21/16

Case filed; $150 filing fee paid

12/21/16:
Notice and Briefing Schedule sent to parties.

Received and docketed 1/17/17:
Plaintiff's **Motion** to Enlarge Time to File Brief; defendant's counsel does not object.

Received and docketed 1/17/17:
Summons for Town of Somerville Town Clerk Alissa Yoder, served 1/9/17

Received and docketed 1/17/17:
Entry of Appearance - Mary A. Denison, Esq. for Defendant.

1/18/17 Ordered and Docketed:
Order on Plaintiff's **Motion** to Enlarge time to File Brief, granted by Justice Billings. Time is extended to
February 23, 2017. Copies sent to parties.

Received and Docketed 2/23/17:
Plaintiff's Brief M.R.Civ.P. 80B together with the Index of Record on Appeal M.R.Civ.P. 80B.

Received April 10, 2017, docketed April 18, 2017:
Plaintiff's Reply Brief, filed by Attorney Katie Foster. File given to Justice Billings.

ORDER ON 80B PETITION SIGNED BY J. DANIEL BILLINGS 6/13/17; DOCKETED AND COPIES
SENT 6/19/17; DECISION BY THE TOWN OF SOMERVILLE BOARD OF APPEALS IS AFFIRMED.